MAURA L. REES, State Bar No. 191698
ANTHONY J WEIBELL, State Bar No. 238850
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
E-mail: mrees@wsgr.com; aweibell@wsgr.com

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES SWEET, et al., | Case No. 3:17-cv-03953-EMC |
| Plaintiffs, | **DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| v. | |
| GOOGLE LLC, et al. | Date:    January 4, 2018 |
| Defendants. | Time:    1:30 PM |
| | Judge:   Hon. Edward M. Chen |
| | Courtroom:    5 |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ...................................................................................viii

STATEMENT OF THE ISSUES .........................................................................................viii

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

INTRODUCTION..................................................................................................................1

    A.    The YouTube Service and Monetization Program.................................................2

    B.    Plaintiffs' "Zombie Go Boom" YouTube Channel .................................................3

    C.    The Alleged Reduction in Ad Revenue from Plaintiffs' Videos ..........................3

    D.    Plaintiffs' First Amended Complaint .................................................................4

ARGUMENT ......................................................................................................................5

I.      LEGAL STANDARD .................................................................................................5

II.    PLAINTIFFS' CLAIMS FAIL BECAUSE THE PARTIES' CONTRACT
      DISCLAIMS ANY OBLIGATION BY GOOGLE TO DISPLAY ADS...........................5

III.   PLAINTIFFS' CLAIMS ARE BARRED BY SECTION 230 OF THE CDA. ..................9

IV.   PLAINTIFFS FAIL TO STATE REQUIRED ELEMENTS OF THEIR CLAIMS.........12

    A.    The Breach of Contract Claim Fails.................................................................12

    B.    The Breach of the Implied Covenant Claim Fails.............................................14

    C.    The Breach of Quasi-Contract Claim Fails. .......................................................15

    D.    The Tortious Interference Claims Fail. .............................................................16

    E.    The UCL Claims Fail. .......................................................................................18

        1.    Plaintiffs Assert No Viable Claim Under the "Unlawful" Prong..............18

        2.    Plaintiffs Assert No Viable Claim Under The "Unfair" Prong.................19

        3.    Plaintiffs Assert No Viable Claim Under The "Fraudulent" Prong. .........20

CONCLUSION .................................................................................................................22

# TABLE OF AUTHORITIES

Page

## CASES

*Apple Inc. v. Psystar Corp.*,
  586 F. Supp. 2d 1190 (N.D. Cal. 2008) ...........................................................19

*Aron v. U-Haul Co. of Cal.*,
  143 Cal. App. 4th 796 (2006).............................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................5

*Assocs. & Aldrich Co. v. Times Mirror Co.*,
  440 F.2d 133 (9th Cir. 1971)........................................................................10, 12

*Bardin v. DaimlerChrysler Corp.*,
  136 Cal. App. 4th 1255 (2006)..........................................................................19

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009)..................................................................9, 11, 12

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003)..............................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................5

*Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*,
  206 F.3d 980 (10th Cir. 2000)......................................................................10, 12

*Black v. Google Inc.*,
  No. 10-02381 CW, 2010 U.S. Dist. LEXIS 82905
  (N.D. Cal. Aug. 13, 2010),
  *aff'd*, 457 F. App'x 622 (9th Cir. 2011) .............................................................23

*Block v. eBay, Inc.*,
  747 F.3d 1135 (9th Cir. 2014)......................................................................18, 22

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
  222 Cal. App. 3d 1371 (1990)............................................................................15

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
  2 Cal. 4th 342 (1992).................................................................................6, 7, 15

*Catanzarite v. Wells Fargo Bank, N.A.*,
  No. E053136, 2012 Cal. App. Unpub. LEXIS 4432
  (Cal. Ct. App. June 13, 2012).............................................................................8

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999)........................................................................................19

*Chavez v. Whirlpool Corp.*,
  93 Cal. App. 4th 363 (2001)...............................................................................20

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ................................................................................21

*Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dep't*,
    387 F. Supp. 2d 1084 (N.D. Cal. 2005) ...................................................................8

*Darnaa LLC v. Google, Inc.*,
    236 F. Supp. 3d 1116 (N.D. Cal. 2017) .................................................................15

*Darnaa, LLC v. Google, Inc.*,
    No. 15-03221 RMW, 2016 U.S. Dist. LEXIS 152126
    (N.D. Cal. Nov. 2, 2016) ................................................................................10, 11

*Davis v. Nadrich*,
    174 Cal. App. 4th 1 (2009) ....................................................................................16

*Day v. Alta Bates Med. Ctr.*,
    98 Cal. App. 4th 243 (2002) ..................................................................................15

*Desaigoudar v. Meyercord*,
    223 F.3d 1020, 1026 (9th Cir. 2000) ....................................................................23

*Doe v. SexSearch.com*,
    502 F. Supp. 2d 719 (N.D. Ohio 2007),
    *aff'd*, 551 F.3d 412 (6th Cir. 2008) ......................................................................14

*Epstein v. Wash. Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996) ...................................................................................5

*Fair Hous. Council of San Fernando Valley v. Roommates.com*,
    *LLC*, 521 F.3d 1157 (9th Cir. 2008) (en banc) ..................................................9, 12

*Foley v. Interactive Data Corp.*,
    47 Cal. 3d 654 (1988) ............................................................................................15

*Gavra v. Google Inc.*,
    No. 12-06547 PSG, 2013 U.S. Dist. LEXIS 100127
    (N.D. Cal. July 17, 2013) ......................................................................................10

*Girafa.com, Inc. v. Alexa Internet, Inc.*,
    No. 08-02745 RMW, 2008 U.S. Dist. LEXIS 78260
    (N.D. Cal. Oct. 6, 2008) ........................................................................................19

*Goddard v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) .................................................................10

*Gonzalez v. Google, Inc.*,
    No. 16-03282 DMR, 2017 U.S. Dist. LEXIS 175327
    (N.D. Cal. Oct. 23, 2017) ......................................................................................11

*Guz v. Bechtel Nat'l, Inc.*,
    24 Cal. 4th 317 (2000) ...........................................................................................14

*Holomaxx Techs. Corp. v. Microsoft Corp.*,
    No. 10-04924 JF, 2011 U.S. Dist. LEXIS 94316 (N.D. Cal. Aug. 23, 2011) ........9

*Holomaxx Techs. v. Microsoft Corp.,*
  783 F. Supp. 2d 1097 (N.D. Cal. 2011) ...................................................................9

*Huskinson & Brown, LLP v. Wolf,*
  32 Cal. 4th 453 (2004)...............................................................................................15, 16

*In re Google Inc. Privacy Policy Litig.,*
  No. 12-01382 PSG, 2013 U.S Dist. LEXIS 171124 (N.D. Cal. Dec. 3, 2013)...................20

*In re iPhone 4S Consumer Litig.,*
  637 F. App'x 414 (9th Cir. 2016)...............................................................................20, 21

*Janda v. T-Mobile, USA, Inc.,*
  No. 05-03729 JSW, 2009 U.S. Dist. LEXIS 24395
  (N.D. Cal. Mar. 13, 2009),
  *aff'd*, 378 F. App'x 705 (9th Cir. 2010) ................................................................8, 22

*Jerry Beeman & Pharmacy Servs., Inc. v. Anthem Prescription Mgmt., LLC,*
  652 F.3d 1085 (9th Cir. 2011).....................................................................................8

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009).....................................................................................21

*Kent v. Microsoft Corp.,*
  No. 13-0091, 2013 U.S. Dist. LEXIS 93932 (C.D. Cal. July 1, 2013) ...............................13

*Klayman v. Zuckerberg,*
  753 F.3d 1354 (D.C. Cir. 2014) ...............................................................................9, 10

*Klein v. Chevron U.S.A., Inc.,*
  202 Cal. App. 4th 1342 (2012) .....................................................................................8

*Korea Supply Co. v. Lockheed Martin Corp.,*
  29 Cal. 4th 1134 (2003)...............................................................................................18

*Lancaster v. Alphabet Inc.,*
  No. 15-05299 HSG, 2016 U.S. Dist. LEXIS 88908
  (N.D. Cal. July 8, 2016) ............................................................................... *passim*

*Lance Camper Mfg. Corp. v. Republic Indem. Co.,*
  44 Cal. App. 4th 194 (1996)........................................................................................7

*Landucci v. State Farm Ins. Co.,*
  65 F. Supp. 3d 694 (N.D. Cal. 2014) ...........................................................................15

*Lee v. Pep Boys Manny Moe & Jack of Cal.,*
  No. 12-05064 JSC, 2014 U.S. Dist. LEXIS 5432 (N.D. Cal. Jan. 14, 2014)......................8

*Levitt v. Yelp! Inc.,*
  765 F.3d 1123 (9th Cir. 2014).................................................................................19, 20

*Levitt v. Yelp! Inc.,*
  No. 10-1321 EMC, 2011 U.S. Dist. LEXIS 124082
  (N.D. Cal. Oct. 26, 2011),
  *aff'd*, 765 F.3d 1123 (9th Cir. 2014) ..........................................................................10

*Lewis v. YouTube, LLC,*
    244 Cal. App. 4th 118 (2015)........................................................................14

*Little v. Amber Hotel Co.,*
    202 Cal. App. 4th 280 (2011)........................................................................16

*Markborough Cal., Inc. v. Super. Ct.,*
    227 Cal. App. 3d 705 (1991)........................................................................14

*Marsh v. Anesthesia Servs. Med. Grp., Inc.,*
    200 Cal. App. 4th 480 (2011)........................................................................19

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,*
    591 F.3d 250 (4th Cir. 2009)..........................................................................9

*O'Connor v. Uber Techs., Inc.,*
    58 F. Supp. 3d 989 (N.D. Cal. 2014) .........................................................7, 8

*Oasis W. Realty, LLC v. Goldman,*
    51 Cal. 4th 811 (2011)..................................................................................12

*Oestreicher v. Alienware Corp.,*
    544 F. Supp. 2d 964 (N.D. Cal. 2008),
    *aff'd,* 322 F. App'x 489 (9th Cir. 2009) ......................................................21

*Oracle Am., Inc. v. CedarCrestone, Inc.,*
    938 F. Supp. 2d 895 (N.D. Cal. 2013) .........................................................18

*Quelimane Co. v. Stewart Title Guar. Co.,*
    19 Cal. 4th 26 (1998)...................................................................................17

*RLH Indus., Inc. v. SBC Commc'ns, Inc.,*
    133 Cal. App. 4th 1277 (2005)......................................................................20

*Rosado v. eBay, Inc.,*
    53 F. Supp. 3d 1256 (N.D. Cal. 2014) ..........................................................21

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.,*
    72 Cal. App. 4th 861 (1999)........................................................................19

*Sencion v. Saxon Mortg. Servs., Inc.,*
    No. 10-3108 PSG, 2011 U.S. Dist. LEXIS 8567 (N.D. Cal. Jan. 28, 2011)........18

*Shroyer v. New Cingular Wireless Servs., Inc.,*
    606 F. 3d 658 (9th Cir. 2010)......................................................................18

*Sikhs for Justice "SFJ", Inc. v. Facebook Inc.,*
    144 F. Supp. 3d 1088, 1093-96 (N.D. Cal. 2015),
    *aff'd,* 2017 U.S. App. LEXIS 17886 (9th Cir. Sept. 13, 2017) ................9, 11, 12

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.,*
    No. 07-0635 JCS, 2007 U.S. Dist. LEXIS 39599 (N.D. Cal. May 16, 2007)........19

*Singh v. Google Inc.,*
    No. 16-03734 BLF, 2017 U.S. Dist. LEXIS 85196 (N.D. Cal. June 2, 2017)........18

*Smith v. Facebook, Inc.*,
   No. 16-01282 EJD, 2017 U.S. Dist. LEXIS 145031
   (N.D. Cal. May 9, 2017) ................................................................................................6, 7

*Song Fi Inc. v. Google, Inc.*,
   108 F. Supp. 3d 876 (N.D. Cal. 2015) .........................................................6, 7, 23

*Spiegler v. Home Depot U.S.A., Inc.*,
   552 F. Supp. 2d 1036 (C.D. Cal. 2008),
   *aff'd*, 349 F. App'x 174 (9th Cir. 2009) ..................................................................8, 22

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ..............................................................................................5

*Stewart v. Rolling Stone LLC*,
   181 Cal. App. 4th 664 (2010) ..................................................................................10, 12

*Sud v. Costco Wholesale Corp.*,
   229 F. Supp. 3d 1075 (N.D. Cal. 2017) ...............................................................22

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ...................................................................................2, 5, 21

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ...............................................................................19

*Trindade v. Reach Media Grp., LLC*,
   No. 12-4759 PSG, 2013 U.S. Dist. LEXIS 107707 (N.D. Cal. July 31, 2013) ..............16, 17

*Tuck Beckstoffer Wines LLC v. Ultimate Distribs., Inc.*,
   682 F. Supp. 2d 1003 (N.D. Cal. 2010) ...............................................................19

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...............................................................................21

*Wietschner v. Monterey Pasta Co.*,
   294 F. Supp. 2d 1102 (N.D. Cal. 2003) ..................................................................5

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ...............................................................................22

*Winchester Mystery House, LLC v. Glob. Asylum, Inc.*,
   210 Cal. App. 4th 579 (2012) .........................................................................16, 17

*Wolf v. Walt Disney Pictures & Television*,
   162 Cal. App. 4th 1107 (2008) .................................................................................7

*Woods v. Google, Inc.*,
   889 F. Supp. 2d 1182 (N.D. Cal. 2012) ....................................................................7

*Yagman v. Galipo*,
   No. 12-7908, 2013 U.S. Dist. LEXIS 120497 (C.D. Cal. Aug. 15, 2013) ......................16

*Yang v. Sun Tr. Mortg., Inc.*,
   No. 10-01541, 2011 U.S. Dist. LEXIS 97606 (E.D. Cal. Aug. 31, 2011) ......................8

*Zeran v. Am. Online, Inc.*,
     129 F.3d 327 (4th Cir. 1997).................................................................................................9

*Zucco Partners, LLC v. Digimarc Corp.*,
     552 F.3d 981 (9th Cir. 2009).................................................................................................23

**STATUTES**

47 U.S.C. § 230 ...................................................................................................... *passim*

Cal. Bus. & Prof. Code § 17200.................................................................................4, 18

Cal. Civ. Code § 3515 .................................................................................................................6

**RULES**

Fed. R. Civ. P. 9(b)....................................................................................................................21

Fed. R. Civ. P. 12(b)(6) ...............................................................................................................5

**MISCELLANEOUS**

Restatement (Second) of Torts § 766 ...............................................................................16, 17

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on January 4, 2018 at 1:30 PM, before the Honorable Edward M. Chen of the United States District Court for the Northern District of California, Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Google LLC and YouTube LLC (together, "Google") will, and hereby do, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the claims against Google asserted by the plaintiffs in this action (collectively, "Plaintiffs") in the First Amended Class Action Complaint ("Complaint" or "FAC") with prejudice for failure and inability to state a claim.

The motion is based upon this Notice of Motion; the Memorandum of Points and Authorities in support thereof; the Declaration of Brian Hawkins in support thereof that is filed herewith ("Hawkins Decl."); the Proposed Order filed herewith; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

**STATEMENT OF THE ISSUES**

1.      Should the claims against Google be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) because they are precluded by the parties' agreement, which expressly permits Google to take the actions about which Plaintiffs complain?

2.      Should the claims against Google be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) because they are barred by Section 230 of the Communications Decency Act?

3.      Should the claims against Google be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) because Plaintiffs cannot state required elements of their claims?

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs created a series of graphic zombie-killing videos and posted them on YouTube. In this lawsuit, Plaintiffs assert that they were injured when YouTube implemented a new video-rating system that limited the volume of advertisements that could be displayed in connection with their videos. Plaintiffs' claims fail as a matter of law.

First, the claims are barred by the terms of the parties' governing agreement. Google provides the YouTube service to Plaintiffs free of charge, and Plaintiffs' ability to have advertisements run on their videos is subject to a written contract that expressly provides that Google has no obligation to display ads on any given video. Whether on a theory of breach of contract or otherwise, Plaintiffs are legally precluded from asserting claims based on conduct that is expressly authorized by their binding contract with Google.

Second, Plaintiffs' claims are barred by federal law. Section 230 of the Communications Decency Act, 47 U.S.C. § 230, immunizes YouTube for actions it takes as a publisher of content created by others. Here, Google's decision to prevent ads from being displayed in connection with certain kinds of user-submitted content is a classic example of an editorial judgment that is protected by Section 230.

Third, even beyond the contract and Google's statutory immunity, Plaintiffs fail to plead facts sufficient to support the elements of the claims they have asserted.

Plaintiffs have now twice tried and failed to state a claim: the First Amended Complaint is only minimally changed from the initial complaint, and any further attempt to fix the core deficiencies in their pleadings would be futile. For these reasons, Plaintiffs' First Amended Complaint should be dismissed with prejudice.

Defs.' Mot. to Dismiss FAC
Case No. 3:17-cv-03953-EMC

-1-

# STATEMENT OF FACTS AND ALLEGATIONS

### A.   The YouTube Service and Monetization Program

Google operates the popular (and free-to-use) YouTube website, where users can upload, share, and watch videos.  All those who use YouTube must agree to its terms of service ("TOS"). FAC ¶¶ 13, 41, 101; Hawkins Decl. Ex. 2.[1] Plaintiffs agreed to the TOS when they created their channel on YouTube and uploaded video content to the service, and again on January 3, 2017. Hawkins Decl. ¶¶ 3, 7-8. The YouTube Terms of Service incorporate the Community Guidelines that caution users against uploading certain types of videos, such as "violent or gory content that's primarily intended to be shocking, sensational, or disrespectful," or "videos that encourage others to do things that might cause them to get badly hurt, especially kids." Hawkins Decl. Ex. 3. These guidelines caution that "[v]ideos showing such harmful or dangerous acts may get age-restricted or removed depending on their severity." *Id.*

Users who upload videos to YouTube can also opt to participate in a program that allows them to receive a share of revenue generated from third-party advertisements that are displayed in or alongside a user's videos. FAC ¶ 2. To participate in this monetization program, users must agree to additional terms and conditions. For most users, including Plaintiffs, these additional terms are called the YouTube Partner Program Terms.[2] The YouTube Partner Program Terms specifically provide that YouTube has no obligation to display advertisements at all:

> YouTube **is not obligated to display any advertisements** alongside your videos and may determine the type and format of ads available on the YouTube Service.

Hawkins Decl. Ex. 1 (emphasis added). The Partner Program Terms also expressly incorporate and reaffirm the applicability of the TOS and the YouTube Partner Program Policies. *Id.*

---

[1] The Court may properly consider the documents attached to the Declaration of Brian Hawkins, which comprise the contract terms that govern the parties' relationship, because these documents are referenced in and relied upon by the Complaint. *See infra* Section I (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)); FAC ¶¶ 13, 41, 101.

[2] Plaintiffs assented to the YouTube Partner Program Terms on January 3, 2017, and that agreement was operative throughout the time of the events alleged in the FAC. Hawkins Decl. ¶ 8.

### B.    Plaintiffs' "Zombie Go Boom" YouTube Channel

Plaintiffs allege that they are the creators of videos uploaded to a YouTube channel they call "Zombie Go Boom," located at www.youtube.com/user/ZombieGoBoomTV. FAC ¶ 17. As reflected by the videos posted to this channel, Zombie Go Boom is a quasi-reality show that depicts Plaintiffs attempting to "kill" zombies using various weapons and other objects.[3] As one reviewing journalist has described it, "Sweet and Meré's hub, on which they test all sorts of weapons on dummies modeled to look like the undead, is unabashedly bloody and violent."[4] Indeed, the Zombie Go Boom channel includes videos teaching viewers how to kill zombie versions of U.S. presidential candidates with blunt force trauma,[5] as well as videos depicting real life small children killing zombies with associated violence, blood, and gore.[6]

### C.    The Alleged Reduction in Ad Revenue from Plaintiffs' Videos

Plaintiffs allege that early in 2017, "YouTube began receiving negative press" that criticized YouTube for allowing advertisements on user-generated videos that contained "objectionable content." FAC ¶ 4. Plaintiffs further allege that Google's third-party advertising partners objected to the display of their ads on mature-themed videos and threatened to stop advertising on YouTube unless Google found a way to ensure their ads were not run on videos with such objectionable content. FAC ¶¶ 4, 80. In order "to prevent advertising partners from leaving YouTube," Plaintiffs allege that Google "created a program with a proprietary

---

[3] Plaintiffs have made recent changes to the Zombie Go Boom channel in an apparent attempt to make the channel seem less objectionable to advertisers. For example, the original video description that accompanied each video has been deleted and replaced with "Advertiser friendly, work safe, teen safe!" *Compare, e.g.*, original video description for video located at https://web.archive.org/web/20160329192257/https://www.youtube.com/watch?v=mquKEyACI2Q ("Can a brick, brass knuckles, or a golf club kill Donald Trump if he ever became a zombie? Only one way to find out."), *with* revised description now shown at https://www.youtube.com/watch?v=mquKEyACI2Q ("Advertiser friendly, work safe, teen safe!").

[4] Sam Gutelle, *Creators Who Lost Revenue During "Adpocalypse" Seek Class Action Lawsuit Against YouTube*, Tubefilter, July 17, 2017, http://www.tubefilter.com/2017/07/17/zombie-go-boom-youtube-adpocalypse-lawsuit/.

[5] *See Hillary Clinton Zombie Kill!*, https://www.youtube.com/watch?v=xnsy03m-sSs; *Hillary Clinton Zombie Kill 2!*, https://www.youtube.com/watch?v=DTnPl8Mwzic; *Donald Trump Zombie Kill Part 1!*, https://www.youtube.com/watch?v=mquKEyACI2Q.

[6] *See Can a 10 year old kill a ZOMBIE?*, https://www.youtube.com/watch?v=g8fX9lsm91U.

algorithm" that "placed a rating on each video" so that "[a]dvertisers could then use this rating system to screen certain ratings of videos from the types of videos on which they desired their advertisements to be placed, or not placed." FAC ¶¶ 6, 80-81.

Plaintiffs allege that after this new rating system was implemented, advertisers pulled their ads from many of Plaintiffs' videos, resulting in a significant drop in the revenue Plaintiffs were earning from their YouTube videos. FAC ¶ 32. Plaintiffs warn that "if this demonetization of Plaintiffs' content continues, Plaintiffs will have to shut down the Zombiegoboom Channel and find other work." FAC ¶ 44.

### D.      Plaintiffs' First Amended Complaint

Plaintiffs' original complaint (filed July 13, 2017) asserted the following claims against Google on behalf of themselves, as well as a putative class of other YouTube users whose videos have appeared on YouTube since March 1, 2017: (1) breach of contract; (2) breach of quasi contract; (3) breach of the implied covenant of good faith and fair dealing; (4) tortious interference with contractual relations and/or prospective economic advantage; and (5) violation of the unlawful, unfair, and fraudulent prongs of California Business and Professions Code § 17200. Plaintiffs also sought an injunction requiring Google to publicly disclose the specifics of its proprietary rating system, as well as monetary damages, restitution, treble damages, punitive damages, and attorneys' fees. Compl. ¶¶ 49-50, Prayer for Relief.

On September 25, 2017, Google filed a motion to dismiss the original complaint. *See* ECF No. 18. Included with that motion was the Declaration of Brian Hawkins, which attached the relevant contracts referenced in and relied on by the original complaint. *See* ECF No. 19. Plaintiffs elected not to oppose that motion to dismiss, but to instead take the opportunity to voluntarily amend their complaint "to address the deficiencies addressed in Defendant's motion to dismiss the complaint." *See* ECF No. 21 at 2. Plaintiffs then filed their First Amended Complaint on October 26, 2017, which asserted the same claims, sought the same relief, and made only minor edits to the factual allegations. *See* ECF No. 23.

Because the minor edits made in the First Amended Complaint do nothing to cure the defects identified in Google's first motion to dismiss, Google again moves to dismiss this action.

**ARGUMENT**

**I.    LEGAL STANDARD**

A complaint should be dismissed under Rule 12(b)(6) when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Accordingly, while the Court accepts as true all material allegations in the complaint, it need not accept the truth of conclusory allegations or unwarranted inferences, nor should it accept legal conclusions as true merely because they are cast in the form of factual allegations. *Id.* at 678-79; *accord Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

Further, the Court should not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[I]n order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *see also Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1110 (N.D. Cal. 2003) ("Where a plaintiff fails to attach to the complaint documents referred to in it, and upon which the complaint is premised, a defendant may attach to the motion to dismiss such documents in order to show that they do not support plaintiff's claim.").

**II.    PLAINTIFFS' CLAIMS FAIL BECAUSE THE PARTIES' CONTRACT DISCLAIMS ANY OBLIGATION BY GOOGLE TO DISPLAY ADS.**

Because Plaintiffs' claims are all premised on injuries allegedly suffered when YouTube ceased displaying ads on Plaintiffs' videos, these claims are precluded by the express terms of

the parties' written contract. That agreement—the YouTube Partner Program Terms—could hardly be clearer that YouTube has no obligation to display ads in connection with Plaintiffs' videos: "YouTube is not obligated to display any advertisements alongside your videos and may determine the type and format of ads available on the YouTube Service." Hawkins Decl. Ex. 1. When Plaintiffs entered into this agreement, therefore, they expressly agreed that YouTube would be under no obligation to show ads on any of their videos and could thus determine when it was appropriate to allow such ads to be displayed.[7] This contractual understanding bars the claims that Plaintiffs now seek to assert against Google.

It is a bedrock principle of California law[8] that no cause of action will lie where it is based on otherwise lawful conduct expressly permitted by a governing contract. *See, e.g.*, *Smith v. Facebook, Inc.*, No. 16-01282 EJD, 2017 U.S. Dist. LEXIS 145031, at *24 (N.D. Cal. May 9, 2017) (contract and tort claims were barred where based on conduct expressly allowed by Facebook's Terms of Use (citing Cal. Civ. Code § 3515 ("He who consents to an act is not wronged by it."))). That is the situation here: Plaintiffs cannot assert claims premised on an alleged obligation for Google to display advertisements on their videos, when Plaintiffs expressly disavowed any such obligation by entering into the Partner Program Terms.

In analogous circumstances, courts routinely reject the same causes of action Plaintiffs assert here where those claims are based on conduct authorized by the parties' agreement:

- **Breach of contract.** It is black-letter law that conduct expressly authorized by a contract cannot give rise to a claim for breach of that agreement. *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342 (1992); *see also, e.g.*, *Song Fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 884-85 (N.D. Cal. 2015) (dismissing

---

[7] Plaintiffs allege that Google did not disclose to Plaintiffs the criteria and algorithms that it used to determine which videos to monetize, and that Google made changes to these criteria and algorithms without giving notice to Plaintiffs. FAC ¶¶ 3, 5, 33, 38. But the parties' contract imposed no such disclosure obligation on Google. To the contrary, the contract expressly disclaimed any obligation to display any advertisements at all, from which it follows that there could be no obligation to display advertisements pursuant to particular criteria, whether disclosed or not.

[8] Plaintiffs' claims are all asserted under California law, as required by the operative agreement. FAC ¶ 13 (acknowledging California choice of law in the TOS).

complaint regarding relocation of plaintiffs' video because YouTube's Terms of Service "authorize it to relocate or remove videos in its sole discretion"); *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1194 (N.D. Cal. 2012) (dismissing breach of contract claim over misplaced ads because "the Agreement expressly disavows any guarantees regarding ad placement").

- **Breach of the implied covenant of good faith.** Likewise, the California Supreme Court has squarely held that "[a]s to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct." *Carma Developers*, 2 Cal. 4th at 374; *see also, e.g.*, *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1121 n.7 (2008) (rejecting implied covenant claim where agreement provided that defendant "shall not be under *any obligation* to exercise any of the rights granted to Purchaser" (emphasis added)); *Smith*, 2017 U.S. Dist. LEXIS 145031, at *27 (claim for breach of the implied covenant barred by express terms of Facebook Terms of Use); *Song Fi*, 108 F. Supp. 3d at 884-85 (dismissing implied covenant claim because "conduct authorized by a contract cannot give rise to a claim for breach of the agreement").

- **Quasi-contract.** Courts have repeatedly rejected quasi-contract claims where the conduct at issue was expressly permitted by the parties' agreement. *Smith*, 2017 U.S. Dist. LEXIS 145031, at *27 (Facebook users could not assert breach of quasi-contract claim based on Facebook's allegedly unlawful tracking of their Internet browsing activities where the Facebook user agreement expressly permitted this conduct); *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1001 (N.D. Cal. 2014) (Uber drivers could not assert breach of quasi-contract claim based on ads that suggested Uber would remit gratuities to drivers where a written agreement expressly disclaimed any obligations arising from Uber ads). Moreover, "it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996); *accord*

*Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012) (same); *O'Connor*, 58 F. Supp. 3d at 1000-01 (same).

- **Tortious Interference.** Tortious interference claims likewise cannot be premised on conduct permitted by a contract. *Catanzarite v. Wells Fargo Bank, N.A.*, No. E053136, 2012 Cal. App. Unpub. LEXIS 4432, at *13 (Cal. Ct. App. June 13, 2012) ("Wells Fargo's refusal to agree to do something it was not required to do and was contractually permitted to refuse, defeats plaintiffs' claim of intentional interference with contract, as a matter of law.").[9]

- **Unfair Competition Law.** UCL claims are impermissible where they contradict the terms of the parties' agreement because "the UCL cannot be used to rewrite [plaintiffs'] contracts or to determine whether the terms of their contracts are fair." *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1046 (C.D. Cal. 2008), *aff'd*, 349 F. App'x 174 (9th Cir. 2009); *see also, e.g.*, *Janda v. T-Mobile, USA, Inc.*, No. 05-03729 JSW, 2009 U.S. Dist. LEXIS 24395, at *26-28 (N.D. Cal. Mar. 13, 2009) (dismissing UCL fraud claim where defendant made unambiguous disclosures in service agreements), *aff'd*, 378 F. App'x 705 (9th Cir. 2010); *Yang v. Sun Tr. Mortg., Inc.*, No. 10-01541, 2011 U.S. Dist. LEXIS 97606, at *16-24 (E.D. Cal. Aug. 31, 2011) (no claim under the UCL could stand where parties' agreement expressly allowed for the actions taken by defendant).

These principles bar Plaintiffs' claims in this case. Because each of Plaintiffs' causes of action seeks to impose obligations expressly disclaimed by the governing agreement, the FAC must be dismissed in its entirety.

---

[9] "[T]his Court may consider an unpublished decision of the California Court of Appeals for its 'persuasive reasoning,' though it is not decisional law." *Lee v. Pep Boys Manny Moe & Jack of Cal.*, No. 12-05064 JSC, 2014 U.S. Dist. LEXIS 5432, at *14-16 n.6 (N.D. Cal. Jan. 14, 2014) (citing *Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dep't*, 387 F. Supp. 2d 1084, 1103 n.7 (N.D. Cal. 2005); *Jerry Beeman & Pharmacy Servs., Inc. v. Anthem Prescription Mgmt., LLC*, 652 F.3d 1085, 1093 (9th Cir. 2011) ("[W]e are not precluded from considering these unpublished decisions as a possible reflection of California law, although they have no precedential value.").

III.    **PLAINTIFFS' CLAIMS ARE BARRED BY SECTION 230 OF THE CDA.**

This action should also be dismissed because any effort to hold Google liable for exercising its editorial discretion regarding when third-party advertising appears in connection with Plaintiffs' videos is barred by Section 230(c) of the CDA, 47 U.S.C. § 230(c).

Section 230 protects website operators from liability for editorial decisions they make concerning material posted on their services. *See Batzel v. Smith*, 333 F.3d 1018, 1027-28 (9th Cir. 2003) (explaining that the CDA was enacted, in part, "to encourage interactive computer services and users of such services to self-police the Internet for obscenity and other offensive material"). As the Ninth Circuit has explained: "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (en banc).

Indeed, the CDA "shields from liability all publication decisions, whether to edit, to remove, or to post, with respect to content generated entirely by third parties." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009); *see also Sikhs for Justice "SFJ", Inc. v. Facebook Inc.*, 144 F. Supp. 3d 1088, 1093-96 (N.D. Cal. 2015) (applying Section 230(c)(1) to dismiss claims against Facebook for removing user's page), *aff'd*, 697 F. App'x 526 (9th Cir. 2017). These provisions provide a "robust immunity." *Holomaxx Techs. Corp. v. Microsoft Corp.*, No. 10-04924 JF, 2011 U.S. Dist. LEXIS 94316, at *6 (N.D. Cal. Aug. 23, 2011). Accordingly, "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content— are barred." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); *see also Batzel*, 333 F.3d at 1031 n.18 (same).[10]

---

[10] CDA immunity should be resolved "at the earliest possible stage of the case." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009) (because Section 230(c) provides "an *immunity from suit* rather than a mere defense to liability," it is "effectively lost if a case is erroneously permitted to go to trial"). Courts thus routinely grant immunity on motions to dismiss. *See, e.g., Lancaster v. Alphabet Inc.*, No. 15-05299 HSG, 2016 U.S. Dist. LEXIS 88908, at *8 (N.D. Cal. July 8, 2016); *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1103 (N.D. Cal. 2011); *accord Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014).

The CDA bars Plaintiffs' claims in this case. There can be no dispute that Google's YouTube service is an "interactive computer service." *See* 47 U.S.C. § 230(f)(2) (defining "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server").[11] And Google's decisions concerning third party advertising—whether to allow it, remove it, or to limit the circumstances in which it is permitted to appear—are clear examples of the kind of "editorial and self-regulatory functions" that section 230(c)(1) protects. *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 986 (10th Cir. 2000); *see also Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1201-02 (N.D. Cal. 2009) (Google's policies regarding publication of third-party ads were a publisher function covered by Section 230(c)(1)); *Klayman*, 753 F.3d at 1359 ("the very essence of publishing is making the decision whether to print or retract a given piece of content"); *Levitt v. Yelp! Inc.*, No. 10-1321 EMC, 2011 U.S. Dist. LEXIS 124082, at *23 (N.D. Cal. Oct. 26, 2011) ("editorial decisions such as whether to publish or de-publish a particular review" are publisher functions covered by 230(c)(1)'s immunity; dismissing claim that Yelp "unlawfully manipulated the content of their business review pages"), *aff'd*, 765 F.3d 1123 (9th Cir. 2014). Indeed, even outside the Section 230 context, courts have long recognized that it is the role of a publisher to decide whether and when to place advertisements. *See Assocs. & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133, 136 (9th Cir. 1971) (publisher may decide whether to publish advertisements and control their content); *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 690-91 (2010) (publisher has the right to choose the "content and placement of advertisements").

A consistent line of decisions from this District have applied Section 230(c)(1) to bar claims that seek to impose liability on online services for making similar types of editorial

---

[11] Numerous courts have held that YouTube qualifies as an "interactive computer service." *See, e.g., Lancaster*, 2016 U.S. Dist. LEXIS 88908, at *7; *Darnaa, LLC v. Google, Inc.*, No. 15-03221 RMW, 2016 U.S. Dist. LEXIS 152126, at *20-21 (N.D. Cal. Nov. 2, 2016); *Gavra v. Google Inc.*, No. 12-06547 PSG, 2013 U.S. Dist. LEXIS 100127, at *4-9 (N.D. Cal. July 17, 2013) (CDA immunized Google from liability arising from allegedly defamatory videos posted to YouTube).

decisions. For example, Judge Ryu recently applied Section 230(c)(1) immunity to dismiss claims against Google for, among other things, its decision-making concerning whether to run ads, and which ads to run, against allegedly terrorist-related video content on YouTube. *Gonzalez v. Google, Inc.*, No. 16-3282 DMR, 2017 U.S. Dist. LEXIS 175327 (N.D. Cal. Oct. 23, 2017). The plaintiffs in *Gonzalez* alleged that, notwithstanding the CDA, Google should be held liable for claims arising out of the November 2015 terrorist attacks in Paris because of its alleged role in running advertisements on terrorist-related videos. *See id.* at *1-2, *6-7. But the court rejected the plaintiffs' theory, holding that the fact that "Google selects" which ads to be displayed alongside user content and shares the ad revenue with users does not disqualify it from CDA immunity and that such claims "fall within the scope of section 230(c)(1)'s grant of immunity and are therefore barred." *Id.* at *38-48.

Similarly, in *SFJ*, recently affirmed by the Ninth Circuit, Judge Koh held that Facebook's removal of a user's page from the service was "publisher conduct immunized by the CDA." 144 F. Supp. 3d at 1095. The court observed that "removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher." *Id.* (quoting *Barnes*, 570 F.3d at 1103). Likewise in *Lancaster*, Judge Gilliam specifically held that YouTube was immune under Section 230(c)(1) for removing videos and advertising from the plaintiff's YouTube channel in response to allegedly false complaints from third parties. 2016 U.S. Dist. LEXIS 88908, at *8; *see also, e.g.*, *Darnaa*, 2016 U.S. Dist. LEXIS 152126, at *23 (YouTube immune from tort liability under Section 230(c)(1) for removing and relocating the plaintiff's video).

The same result is warranted in this case. Plaintiffs seek to hold Google liable for its determinations regarding which videos are eligible for advertising and under what circumstances third-party ads will be displayed on its service. That is a paradigmatic example of a publisher decision, just like the determination to publish user-submitted content in the first place, or to alter or remove such content. As the Ninth Circuit has explained: "It is because such conduct is *publishing conduct* that we have insisted that section 230 protects from liability 'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post

online.'" *Barnes*, 570 F.3d at 1103 (quoting *Roommates*, 521 F.3d at 1170-71) (emphasis in original); *see also, e.g.*, *Ben Ezra*, 206 F.3d at 986 ("By deleting the allegedly inaccurate stock quotation information, Defendant was simply engaging in the editorial functions Congress sought to protect."). So it is here. When Google decides that certain videos should have limited (or no) advertising associated with them, it is acting as a publisher. *See Times Mirror*, 440 F.2d at 136; *Stewart*, 181 Cal. App. 4th at 690-91. Plaintiffs' effort to attack that editorial judgment is squarely barred by section 230(c)(1). *See Lancaster*, 2016 U.S. Dist. LEXIS 88908, at *8 ("[T]he Court holds that § 230(c)(1) of the CDA precludes as a matter of law any claims arising from Defendants' removal of Plaintiff's videos and GRANTS the motion to dismiss to the extent that Plaintiff seeks to impose liability as a result of said removals.").[12]

For these reasons, Plaintiffs' claims fail as a matter of law, and the FAC should be dismissed with prejudice. *See Lancaster*, 2016 U.S. Dist. LEXIS 88908, at *8 ("Any amendment would be futile, and thus the Court dismisses such claims with prejudice"); *SFJ*, 144 F. Supp. 3d at 1096 (dismissing claims with prejudice because Section 230 "must be interpreted to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles" (quoting *Roommates*, 521 F.3d at 1175)).

## IV.   PLAINTIFFS FAIL TO STATE REQUIRED ELEMENTS OF THEIR CLAIMS.

Even beyond these categorical defects in the FAC, Plaintiffs fail to state a legally viable claim under any of the causes of action they invoke.

### A.   The Breach of Contract Claim Fails.

In California, a breach of contract claim requires: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Plaintiffs fail to allege these elements. FAC ¶¶ 100-105.

---

[12] Section 230(c)(2) of the CDA, 47 U.S.C. § 230(c)(2), provides an independent basis for dismissal of Plaintiffs' claims, but in light of the numerous other arguments presented in this motion, there is no need to address that issue here. Google reserves its rights to invoke that immunity, if necessary, at a later stage of the case.

First, as set forth above, a breach of contract claim cannot be premised on conduct that is authorized by the contract. *Supra* Section II. As a matter of law, any decision by Google to limit the ads that run in connection with Plaintiffs' videos could not have breached the parties' contract because that agreement expressly disclaims any obligation on YouTube to display ads.

Second, Plaintiffs fail to sufficiently plead the existence of any contract terms that were actually breached by the conduct at issue. Plaintiffs did not attach the parties' contracts to their complaint, and they do not identify any term of those agreements (by paragraph, section, or otherwise) that Google allegedly breached. Consequently, it is impossible to discern the nature of the alleged breach, as the complaint includes only vague and conclusory allegations on this point. The claim should thus be dismissed. *Kent v. Microsoft Corp.*, No. 13-0091, 2013 U.S. Dist. LEXIS 93932, at *9-10 (C.D. Cal. July 1, 2013) ("since neither the terms of the contract, nor its manner of breach, have been asserted with sufficient detail, the Plaintiff has yet to plead a valid cause of action for breach of contract").

Third, Plaintiffs make a conclusory allegation that they "performed all obligations arising from the contract," but they fail to allege what those obligations were and any facts showing that they performed those obligations. FAC ¶ 103. Indeed, the violent subject matter of Plaintiffs' videos (depicting gory zombie killings) is non-compliant with the YouTube terms that disallow "violent or gory content that's primarily intended to be shocking, sensational, or disrespectful," or "videos that encourage others to do things that might cause them to get badly hurt, especially kids." Hawkins Decl. Ex. 3.

Finally, Plaintiffs cannot allege contract damages or entitlement to specific performance based on the allegedly erroneous removal of ads from their videos. The governing YouTube TOS include a specific limitation on liability provision: "IN NO EVENT SHALL YOUTUBE … BE LIABLE TO YOU FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES WHATSOEVER RESULTING FROM ANY (I) ERRORS, MISTAKES, OR INACCURACIES OF CONTENT … AND/OR (V) ANY ERRORS

OR OMISSIONS IN ANY CONTENT ….'" Hawkins Decl. Ex. 2 § 10.[13] Controlling California appellate authority makes clear that this provision bars any claim for contract damages in circumstances like this. *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125 (2015). In *Lewis*, the plaintiff sued Google for breach of contract after it allegedly deleted her entire YouTube channel, including videos and associated view counts. The Court of Appeal held that this constituted an "omission" of "content" under the limitation of liability provision, and that the provision applied to bar any claim for damages. *Id.* at 125-26. Accordingly, the Court affirmed dismissal of the plaintiff's breach of contract claim, holding the plaintiff "failed to establish that she was entitled to either damages or specific performance" because the contract precluded all damages, and plaintiff identified no contractual provisions to be specifically performed. *Id.* at 120, 125-27.

Here, as in *Lewis* (which controls this case), Plaintiffs assert a breach of contract claim based on Google's allegedly erroneous omission of content (the ads that used to appear next to Plaintiffs' videos). *See* FAC ¶ 7 (alleging that ads were erroneously pulled from Plaintiffs' videos because Google's "algorithms did not work"). Consequently, the limitation of liability in the YouTube TOS acts to bar their claims that seek contract damages.

### B.       The Breach of the Implied Covenant Claim Fails.

Plaintiffs' implied covenant claim fails for many of the same reason as the breach contract claim:

First, as discussed above, *see supra* Section II, the implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-50 (2000). "The

---

[13] The need for this limitation of liability is clear in the context of the service Google provides. Google offers the YouTube service for free and covers the substantial costs of file storage, bandwidth and administration. *See, e.g.*, *Markborough Cal., Inc. v. Super. Ct.*, 227 Cal. App. 3d 705, 714 (1991) ("[L]imitation of liability provisions are particularly important where the beneficiary of the clause is involved in a 'high-risk, low-compensation service.'"); *Doe v. SexSearch.com*, 502 F. Supp. 2d 719, 734 (N.D. Ohio 2007) ("[A] limitation on damages clause is commercially reasonable to avoid the specter of potential liability which far exceeds the meager price paid, if any, for membership."), *aff'd*, 551 F.3d 412 (6th Cir. 2008).

covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690 (1988); *see also Carma Developers*, 2 Cal. 4th at 374. Plaintiffs cannot invoke the implied covenant to assert that Google is required to display advertisements on Plaintiffs' videos (or to display them pursuant to particular criteria) when the contract expressly disclaims any obligation to display ads at all. That approach impermissibly seeks to rewrite the contract, not enforce it.

Second, like the express contract claim, Plaintiffs' implied covenant claim is barred by the limitation of liability provision in the TOS. *Darnaa LLC v. Google, Inc.*, 236 F. Supp. 3d 1116, 1126 (N.D. Cal. 2017) ("Section 10 of the [YouTube] terms of service agreement bars claims for breach of the implied covenant under this fact pattern.").

Third, Plaintiffs' implied covenant claim should be dismissed because it is duplicative of the breach of contract claim and based on the same alleged conduct. *Compare* FAC ¶¶ 101-104, *with* FAC ¶¶ 108-112; *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014) ("a claim alleging breach of the implied covenant of good faith and fair dealing cannot be 'based on the same breach as the contract claim,' or else it will be dismissed"); *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (breach of the implied covenant claim fails if it does "not go beyond the statement of a mere contract breach").

### C.     The Breach of Quasi-Contract Claim Fails.

Setting aside the rule that a plaintiff can have no quasi-contract claim where the parties have an express contract on the same subject matter (*supra* Section II), Plaintiffs' quasi-contract claim also fails because there is no allegation that Google ever asked Plaintiffs to perform any services. To establish a quasi-contract claim "a plaintiff must establish *both* that he or she was acting pursuant to either an *express or implied request* for such services from the defendant *and* that the services rendered were *intended to and did benefit* the defendant." *Day v. Alta Bates Med. Ctr.*, 98 Cal. App. 4th 243, 248 (2002) (emphasis in original). A plaintiff "must [also] show the circumstances were such that the services were rendered under some understanding or expectation of *both parties* that compensation therefor was to be made." *Huskinson & Brown,*

*LLP v. Wolf*, 32 Cal. 4th 453, 458 (2004) (emphasis added). Plaintiffs allege none of that here. The FAC is devoid of any allegation that Google requested that Plaintiffs provide any services to YouTube or create the Zombie Go Boom content. Rather, Plaintiffs voluntarily created the Zombie Go Boom videos without any request from YouTube, and they allege no exclusive arrangement between Plaintiffs and YouTube regarding the posting of those videos to YouTube.

### D.   The Tortious Interference Claims Fail.

Plaintiffs next assert two related claims for intentional interference with their contractual and/or economic relationships. Both fail.

As an initial matter, each of these claims requires a plausible allegation that Google had knowledge of the contractual or economic relationships between Plaintiffs and particular third parties. *See Winchester Mystery House, LLC v. Glob. Asylum, Inc.*, 210 Cal. App. 4th 579, 596 (2012); *accord* Restatement (Second) of Torts § 766 cmt. i ("the actor must have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract"). While the defendant need not know every detail of the contract, actionable interference requires knowing enough to understand that one's acts interfere with its performance. *Little v. Amber Hotel Co.*, 202 Cal. App. 4th 280, 302 (2011); *Winchester Mystery House*, 210 Cal. App. 4th at 585. Conclusory allegations that the defendant knew of the plaintiff's contract are not sufficient. *See, e.g.*, *Yagman v. Galipo*, No. 12-7908, 2013 U.S. Dist. LEXIS 120497, at *37 (C.D. Cal. Aug. 15, 2013) (dismissing claim where plaintiff "fails to plausibly allege that the other Defendants were even aware of Plaintiff's hourly fee contract with [third party]"); *Trindade v. Reach Media Grp., LLC*, No. 12-4759 PSG, 2013 U.S. Dist. LEXIS 107707, at *52-53 (N.D. Cal. July 31, 2013) (granting motion to dismiss for failure to allege knowledge of "any specific contracts or details about the contracts"); *Davis v. Nadrich*, 174 Cal. App. 4th 1, 10-11 (2009) (because defendant did not know that plaintiff still had a "viable partnership" agreement, he was not "sufficiently aware of the details" of that contract "to form an intent to harm it").

Plaintiffs here do not come close to meeting this requirement. The FAC identifies two types of business relationships that were allegedly disrupted: an offer by an interested buyer to

purchase all of Plaintiffs' existing content (¶ 45), and deals to promote other products through videos advertising those goods and services (¶ 46). But Plaintiffs offer no plausible allegation that Google knew about any of these relationships, much less that it had sufficient information about them to have intentionally disrupted them. The only gesture Plaintiffs even try to make in the direction of knowledge is the generalized assertion that "YouTube was aware that Plaintiffs and Class members *routinely* enter into such related contracts with third parties." FAC ¶ 95 (emphasis added). Even if such a bare conclusion could be accepted as true, general knowledge that industry participants have contracts is not equivalent to knowledge that a plaintiff has specific contract terms relevant to alleged interference. *See Trindade*, 2013 U.S. Dist. LEXIS 107707, at *52-53 (allegations that defendant had "generalized knowledge that [plaintiff] was a party to contracts with advertisers" failed to properly allege knowledge of "any specific contracts or details about the contracts"); *Winchester Mystery House*, 210 Cal. App. 4th at 596 (rejecting tortious interference claim where defendant did not have enough information about the nature of plaintiff's contract to know that it was interfering).

Plaintiffs' failure to plead Google's knowledge of their third-party relationships also results in a failure to plead intent to interfere. This element requires that the defendant at least "know[] that the interference is certain or substantially certain to occur as a result of his action." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56 (1998) (quoting Restatement (Second) of Torts § 766 cmt. j). Here, "[b]ecause [Plaintiffs] fail[] to sufficiently allege that [Google] had anything more than generalized knowledge of any contractual relationships, [they] likewise fail[] to allege that [Google] developed the requisite intent to disrupt those relationships." *Trindade*, 2013 U.S. Dist. LEXIS 107707, at *54. Indeed, Plaintiffs' effort to allege intentional interference is even less plausible in light of the FAC's allegation that Google's changes in monetization policy were in response to unrelated considerations about responding to advertisers' concerns about ads appearing alongside inappropriate material. FAC ¶¶ 4, 80.

Finally, Plaintiffs have not alleged any independently wrongful act, which is a necessary element of the claim for interference with prospective economic advantage. "[A]n act is

1   independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional,

2   statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v.*

3   *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003). Yet Plaintiffs have failed to allege any

4   unlawful act or violation of law by Google. *See, e.g.*, *Block v. eBay, Inc.*, 747 F.3d 1135, 1141

5   (9th Cir. 2014) (affirming dismissal of interference claim where no "independently wrongful act"

6   was adequately alleged).

7        **E.      The UCL Claims Fail.**

8        Under Section 17200 of the UCL, a plaintiff may assert claims for conduct that is

9   "unlawful," "unfair," or "fraudulent." Plaintiffs' First and Second Claims for Relief relate to

10  these three prongs, but the FAC fails to make out a claim as to any prong.

11       **1.      Plaintiffs Assert No Viable Claim Under the "Unlawful" Prong.**

12       "Unlawful" conduct under the UCL refers to independently unlawful acts, and courts

13  dismiss causes of action where the plaintiff fails to allege factual support for each element of an

14  independently unlawful act upon which the unfair competition claim rests. *See Sencion v. Saxon*

15  *Mortg. Servs., Inc.*, No. 10-3108 PSG, 2011 U.S. Dist. LEXIS 8567, at *15-16 (N.D. Cal. Jan.

16  28, 2011). If the plaintiff fails to state the underlying claim, the dependent UCL "unlawful"

17  claim fails as well. *See Oracle Am., Inc. v. CedarCrestone, Inc.*, 938 F. Supp. 2d 895, 908 (N.D.

18  Cal. 2013) (section 17200 claim failed because underlying antitrust claim dismissed).

19       Plaintiffs cannot sustain their "unlawful" UCL claim because they have not alleged any

20  qualifying unlawful act. They first attempt to condition the UCL claim on a "violat[ion] of

21  California Contract Law principles," FAC ¶ 67, but breach of contract is foreclosed under the

22  law from serving as the underlying wrong. *Shroyer v. New Cingular Wireless Servs., Inc.*, 606 F.

23  3d 658, 666 (9th Cir. 2010); *Singh v. Google Inc.*, No. 16-03734 BLF, 2017 U.S. Dist. LEXIS

24  85196, at *11 (N.D. Cal. June 2, 2017) (breach of implied covenant cannot serve as underlying

25  wrong). Plaintiffs also seek to draw in common law fraud and tortious interference. FAC ¶ 67.

26  For the same reasons that those claims fail on a stand-alone basis (with common law fraud

27  failing for the same reason as the UCL fraud claim, as discussed below), the UCL claim under

28  the "unlawful" prong fails as well.

2. **Plaintiffs Assert No Viable Claim Under The "Unfair" Prong.**

For claims of "unfair" conduct, UCL claims brought by a business like Plaintiffs' require facts showing "actual or threatened impact on competition." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999); *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1137 (9th Cir. 2014) (plaintiffs in business-to-business cases must satisfy "*Cel-Tech's* requirement that the effect of [defendant's] conduct amounts to a violation of antitrust laws 'or otherwise significantly threatens or harms competition'").[14]

Under this standard, individualized injury suffered by a lone plaintiff is not enough. *Cel-Tech*, 20 Cal. 4th at 186 ("[i]njury to a competitor is not equivalent to injury to competition"); *Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 501 (2011) ("individualized harm … does not support a claim for violation of the UCL"); *see also Tuck Beckstoffer Wines LLC v. Ultimate Distribs., Inc.*, 682 F. Supp. 2d 1003, 1019 (N.D. Cal. 2010) (plaintiff "must establish harm to competition, not merely harm to itself"); *Girafa.com, Inc. v. Alexa Internet, Inc.*, No. 08-02745 RMW, 2008 U.S. Dist. LEXIS 78260, at *5, *9 (N.D. Cal. Oct. 6, 2008) (same); *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, No. 07-0635 JCS, 2007 U.S. Dist. LEXIS 39599, at *19 (N.D. Cal. May 16, 2007) (same).

In determining whether actual harm to competition has been alleged, there is no "relevant distinction in the standards" between an antitrust claim and a UCL claim. *Apple Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1204 (N.D. Cal. 2008). Hence, even in cases where the plaintiff can show some conceivable harm to competition, the challenged conduct does not violate the UCL if it does not meet the test for harm to competition under antitrust jurisprudence. *See, e.g., Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1140, 1153 (9th Cir. 2008) (no UCL

---

[14] Because this is a business and not a consumer case, the alternative "balancing" test for unfairness that is sometimes used in consumer cases does not apply. But even if it did, Plaintiffs have failed to allege facts showing that Google's conduct in attempting to avoid monetization of extreme or offensive content is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1260 (2006). Nor have they pleaded facts showing that the "the utility of [Google's] conduct" is outweighed by "the harm to the alleged victim." *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999).

violation where plaintiff's competitor lied to customers that its karaoke records were 100 percent licensed because such conduct was not "an incipient violation of antitrust law"); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) (alleged resale price maintenance scheme was not "unfair" where such conduct was "not an unreasonable restraint of trade" under antitrust jurisprudence); *RLH Indus., Inc. v. SBC Commc'ns, Inc.*, 133 Cal. App. 4th 1277, 1286-87 (2005) (no UCL violation despite exclusion of competitor where competition remained in the market among other competitors).

Here, Plaintiffs' "unfairness" claim is based entirely on the premise that they have suffered a loss of revenue that makes it more difficult for them to compete in the "market for content providers." FAC ¶¶ 32 (describing Plaintiffs' alleged loss of revenue following Google's advertising policy change), 68 (alleging an undefined "market for content providers"). Yet this individualized competitor injury is not cognizable under California's unfair competition law, as illustrated by the Ninth Circuit's decision in *Levitt v. Yelp*. 765 F.3d at 1136-37. There, business owners sued Yelp based on its advertising practices: "the crux of the business owners' complaint is that Yelp's conduct unfairly injures their economic interests to the benefit of other businesses who choose to advertise with Yelp." *Id.* at 1136. The business owners sought to invoke the unfair prong of the UCL by alleging generally that Yelp's conduct "harms competition by favoring businesses that submit to Yelp's manipulative conduct … to the detriment of competing businesses that decline to purchase advertising." *Id.* The Ninth Circuit affirmed the dismissal of the unfair competition claim, finding that the individualized harm alleged by the business owners did not amount to a violation of antitrust laws or threaten or harm competition. *Id.* at 1137. Plaintiffs' complaint here—that they suffered harm and have been treated differently than competitor content providers—should be dismissed for the same reason.

### 3.   Plaintiffs Assert No Viable Claim Under The "Fraudulent" Prong.

To state a claim under the UCL's fraud prong, "Plaintiffs must allege specific facts to show that the members of the public are likely to be deceived" by a specific misrepresentation. *In re Google Inc. Privacy Policy Litig.*, No. 12-01382 PSG, 2013 U.S Dist. LEXIS 171124, at *44-45 (N.D. Cal. Dec. 3, 2013); *accord In re iPhone 4S Consumer Litig.*, 637 F. App'x 414,

415-16 (9th Cir. 2016). "[T]o be actionable under the UCL, a concealed fact must be material in the sense that it is likely to deceive a reasonable consumer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025-26 (9th Cir. 2008) (citing *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 806 (2006)). In addition, the "[p]laintiff must show that he personally lost money or property because of his own *actual and reasonable reliance* on the allegedly untrue or misleading statements." *Rosado v. eBay, Inc.*, 53 F. Supp. 3d 1256, 1264-65 (N.D. Cal. 2014) (emphasis added).

Federal Rule of Civil Procedure 9(b) applies to UCL claims based on allegedly fraudulent practices. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009). Under this standard, a plaintiff must include particularized allegations identifying the alleged statements and showing how they were fraudulent. *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008) ("[P]laintiffs seeking to satisfy Rule 9(b) must 'set forth an explanation as to why the statement or omission complained of was false and misleading.'"), *aff'd*, 322 F. App'x 489 (9th Cir. 2009). The allegations must contain "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiffs' fraud claim here fails on each of these bases. As an initial matter, it is unclear what the basis is for this claim. Plaintiffs do not identify any specific statement by Google that was supposedly false or misleading, much less provide any of the detail required by Rule 9(b), such as the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz*, 476 F.3d at 764. Plaintiffs assert only that they allegedly relied on "the fact that historically they could expect a certain return on investment to the content they created." FAC ¶ 79. This falls far short of alleging a specific false statement by Google that could conceivably have created such an expectation.

Even if Plaintiffs could somehow identify a misleading statement, their claim still would fail for lack of reasonable reliance. As a matter of law, Plaintiffs could not have reasonably relied on a (hypothetical) representation by Google that advertising on Plaintiffs' videos would continue in the same manner indefinitely. That is because, as discussed, the express provisions of the governing Partner Program Terms made clear to Plaintiffs that Google had no obligation to

display any advertisements at all in connection with their videos. It is well settled that such clear language in a governing agreement setting forth the terms of the parties' relationship precludes a contracting party from claiming that it reasonably relied on an extra-contractual statement suggesting something different. *See, e.g.*, *Block*, 747 F.3d at 1140 (affirming dismissal of UCL claim because defendant's disclosures required conclusion that plaintiff "could not have relied on the alleged misrepresentations, nor would they have been material"); *Janda*, 2009 U.S. Dist. LEXIS 24395, at *26-28 (dismissing UCL fraud claim where defendant made unambiguous disclosures in service agreements); *Spiegler*, 552 F. Supp. 2d at 1047-48 (dismissing UCL fraud claim in light of an unambiguous contract).

Finally, to the extent Plaintiffs suggest that their claim may be based on a theory of fraudulent omission, they do not come close to alleging what is required. "In general, 'California courts have ... rejected a broad obligation to disclose,'" and an omission claim is permissible only where the defendant had an affirmative legal duty to disclose the information at issue. *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1085 (N.D. Cal. 2017) (quoting *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012)). Google was under no such duty here, because, again, Google had already expressly disclosed that it "is not obligated to display any advertisements alongside [Plaintiffs'] videos." Hawkins Decl. Ex. 1. Plaintiffs' Complaint includes only a conclusory assertion that "YouTube had a duty to clearly and conspicuously disclose to Plaintiffs and Class members all of the material terms of its monetization structure, and the algorithms by which AdSense was selecting content to be monetized or demonetized." FAC ¶ 88. Plaintiffs allege no facts establishing the source of such an alleged duty to disclose. Beyond that, Plaintiffs cannot allege that any such alleged omission regarding Google's criteria for making ad placement decisions was material, given that Plaintiffs agreed in the Partner Program Terms that Google had no obligation to display ads at all.

## CONCLUSION

For these reasons, Google respectfully requests that the Court dismiss the First Amended Complaint. The dismissal should be with prejudice, as any further amendment would be futile in light of the clear terms of the parties' agreements and the protections provided to Google by

Section 230 of the CDA. *See, e.g.*, *Lancaster*, 2016 U.S. Dist. LEXIS 88908, at *8 (dismissing claims with prejudice following conclusion that "the CDA precludes as a matter of law" the defendant's claims); *Black v. Google Inc.*, No. 10-02381 CW, 2010 U.S. Dist. LEXIS 82905, at *9 (N.D. Cal. Aug. 13, 2010) ("Plaintiffs' action is dismissed with prejudice as barred by 47 U.S.C. § 230."), *aff'd*, 457 F. App'x 622 (9th Cir. 2011); *Song Fi*, 108 F. Supp. 3d at 885 (dismissing claims with prejudice upon finding that because "YouTube's Terms of Service unambiguously foreclose these claims, granting leave to amend would be futile"). Indeed, Plaintiffs' failure to make changes sufficient to state a claim after reviewing Google's prior motion to dismiss and voluntarily amending their original complaint underscores the futility of any attempt at further amendment. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (the fact that an amended complaint has failed to correct deficiencies previously identified "is a strong indication" that further amendment is futile); *see also Desaigoudar v. Meyercord*, 223 F.3d 1020, 1026 (9th Cir. 2000) (where a plaintiff has previously amended the complaint, a "district court's discretion to deny leave to amend is particularly broad").

Dated: November 30, 2017

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *Maura L. Rees*
        Maura L. Rees

*Attorneys for Defendants*
GOOGLE LLC and YOUTUBE, LLC