1  MAURA L. REES, State Bar No. 191698
   ANTHONY J WEIBELL, State Bar No. 238850
2  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
3  650 Page Mill Road
   Palo Alto, CA 94304-1050
4  Telephone: (650) 493-9300
   Facsimile: (650) 565-5100
5  E-mail: mrees@wsgr.com; aweibell@wsgr.com

6  Attorneys for Defendants
   GOOGLE LLC and YOUTUBE, LLC

7

8

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13  JAMES SWEET, et al.,                    Case No. 3:17-cv-03953-EMC

14                 Plaintiffs,              **DEFENDANTS' REPLY IN
                                            SUPPORT OF MOTION TO
15        v.                                DISMISS THE FIRST AMENDED
                                            COMPLAINT**
16  GOOGLE LLC, et al.
                                            Date:       March 1, 2018
17                 Defendants.              Time:       1:30 PM
                                            Judge:      Hon. Edward M. Chen
18                                          Courtroom:  5

19

20

21

22

23

24

25

26

27

28

# CONTENTS

I.  INTRODUCTION .................................................................................................1

II.  PLAINTIFFS' CLAIMS ARE BARRED BY THE GOVERNING CONTRACT. ...........2

    A.  The "No Obligation" Clause Does Not Make the Contract Unconscionable. ........2

    B.  The "No Obligation" Clause Does Not Make the Contract Illusory. ......................5

III.  PLAINTIFFS' CLAIMS ARE BARRED BY SECTION 230 OF THE CDA. .................7

IV.  PLAINTIFFS FAIL TO OTHERWISE STATE A CLAIM. ...........................................10

    A.  The Breach of Express Contract Claim Fails. ................................................10

    B.  The Good Faith and Fair Dealing Claim Fails. ...................................................11

    C.  The Breach of Quasi-Contract Claim Fails. ........................................................11

    D.  The Tortious Interference Claim Fails. ................................................................12

    E.  Plaintiffs' Remaining UCL Claim Fails. .............................................................13

V.  CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*24 Hour Fitness, Inc. v. Superior Court,*
    66 Cal. App. 4th 1199 (1998)................................................................6

*Abbit v. ING USA Annuity & Life Ins. Co.,*
    252 F. Supp. 3d 999 (S.D. Cal. 2017),
    *appeal docketed,* No. 17-55836 (9th Cir. 2017)..............................11

*Altera Corp. v. Clear Logic, Inc.,*
    424 F.3d 1079 (9th Cir. 2005).............................................................12

*Armendariz v. Found. Health Psychcare Servs., Inc.,*
    24 Cal. 4th 83 (2000).............................................................................5

*Asmus v. Pac. Bell,*
    23 Cal. 4th 1 (2000)...............................................................................6

*Badie v. Bank of Am.,*
    67 Cal. App. 4th 779 (1998)..................................................................7

*Baltazar v. Forever 21, Inc.,*
    62 Cal. 4th 1237 (2016).........................................................................3

*Black v. Google Inc.,*
    No. 10-02381 CW, 2010 U.S. Dist. LEXIS 82905
    (N.D. Cal. Aug. 13, 2010),
    *aff'd,* 457 F. App'x 622 (9th Cir. 2011) ..........................................10

*Bradford v. Flagship Facility Servs.,*
    No. 17-01245 LHK, 2017 U.S. Dist. LEXIS 115262
    (N.D. Cal. July 24, 2017)......................................................................5

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,*
    2 Cal. 4th 342 (1992).............................................................................7

*Casas v. Carmax Auto Superstores Cal. LLC,*
    224 Cal. App. 4th 1233 (2014)..............................................................6

*Chavarria v. Ralphs Grocery Co.,*
    733 F.3d 916 (9th Cir. 2013).................................................................6

*Circuit City Stores, Inc. v. Adams,*
    279 F.3d 889 (9th Cir. 2002).................................................................3

*Darnaa, LLC v. Google, Inc.,*
    No. 15-03221 RMW, 2015 U.S. Dist. LEXIS 161791
    (N.D. Cal. Dec. 2, 2015) ...................................................................3, 4

*Day v. Alta Bates Med. Ctr.,*
    98 Cal. App. 4th 243 (2002)................................................................11

*Dean Witter Reynolds v. Superior Court,*
    211 Cal. App. 3d 758 (1989).................................................................4

*Dotson v. Amgen, Inc.*,
    181 Cal. App. 4th 975 (2010) ............................................................................................7

*Goddard v. Google, Inc.*,
    No. 08-2738 JF, 2008 U.S. Dist. LEXIS 101890
    (N.D. Cal. Dec. 17, 2008) ...............................................................................................8

*Goddard v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) ....................................................................8, 10

*Gonzalez v. Google, Inc.*,
    No. 16-03282 DMR, 2017 U.S. Dist. LEXIS 175327
    (N.D. Cal. Oct. 23, 2017) ................................................................................................9

*Graham v. Scissor-Tail, Inc.*,
    28 Cal. 3d 807 (1981) ......................................................................................................5

*Hubbert v. Dell Corp.*,
    835 N.E.2d 113 (Ill. App. Ct. 2005) ................................................................................3

*Hume v. United States*,
    132 U.S. 406 (1889) .........................................................................................................4

*In re Webkinz Antitrust Litig.*,
    695 F. Supp. 2d 987 (N.D. Cal. 2010) ..........................................................................14

*Ingle v. Circuit City Stores, Inc.*,
    328 F.3d 1165 (9th Cir. 2003) ......................................................................................5, 6

*Int'l Bus. Machs. Corp. v. Bajorek*,
    191 F.3d 1033 (9th Cir. 1999) ..........................................................................................3

*Kent v. Microsoft Corp.*,
    No. 13-0091, 2013 U.S. Dist. LEXIS 93932
    (C.D. Cal. July 1, 2013) ................................................................................................10

*Klussman v. Cross-Country Bank*,
    134 Cal. App. 4th 1283 (2005) ........................................................................................3

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) ........................................................................................14

*Little v. Auto Stiegler, Inc.*,
    29 Cal. 4th 1064 (2003) ...................................................................................................5

*Minich v. Allstate Ins. Co.*,
    193 Cal. App. 4th 477 (2011) ..........................................................................................6

*Mohamed v. Uber Techs., Inc.*,
    109 F. Supp. 3d 1185 (N.D. Cal. June 9, 2015),
    *rev'd in part*, 848 F.3d 1201 (9th Cir. 2016) .................................................................6

*Monex Deposit Co. v. Gilliam*,
    680 F. Supp. 2d 1148 (C.D. Cal. 2010) ........................................................................12

-iii-

*Net Glob. Mktg., Inc. v. Dialtone, Inc.*,
  217 F. App'x 598 (9th Cir. 2007).................................................................6

*O'Connor v. Uber Techs., Inc.*,
  150 F. Supp. 3d 1095 (N.D. Cal. 2015) ........................................................6

*Palmer v. Apple Inc.*,
  No. 15-05808 RMW, 2016 U.S. Dist. LEXIS 51823
  (N.D. Cal. Apr. 15, 2016)............................................................................14

*Perdue v. Crocker Nat'l Bank*,
  38 Cal. 3d 913 (1985)....................................................................................5

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
  55 Cal. 4th 223 (2012)...............................................................................4, 5

*Poublon v. Robinson Co.*,
  No. 12-06654, 2015 WL 588515 (C.D. Cal. Jan. 12, 2015),
  *rev'd*, 846 F.3d 1251 (9th Cir. 2017) ...........................................................6

*Raymat Materials, Inc. v. A&C Catalysts, Inc.*,
  No. 13-00567 WHA, 2013 U.S. Dist. LEXIS 97778
  (N.D. Cal. July 12, 2013) ............................................................................10

*Ridgeway v. Nabors Completion & Prod. Servs. Co.*,
  139 F. Supp. 3d 1084 (C.D. Cal. 2015),
  *appeal docketed*, No. 15-56673 (9th Cir. Oct. 28, 2015) ..............................6

*Roman v. Superior Court*,
  172 Cal. App. 4th 1462 (2009)......................................................................7

*Roy v. Contra Costa Cty.*,
  No. 15-02672 TEH, 2015 U.S. Dist. LEXIS 131814
  (N.D. Cal. Sept. 29, 2015)...........................................................................11

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
  72 Cal. App. 4th 861 (1999).........................................................................13

*Serpa v. Cal. Sur. Investigations, Inc.*,
  215 Cal. App. 4th 695 (2013).........................................................................6

*Siemens Credit Corp. v. Newlands*,
  905 F. Supp. 757 (N.D. Cal. 1994) ...............................................................4

*Silva v. City of San Leandro*,
  744 F. Supp. 2d 1036 (N.D. Cal. 2010) ......................................................11

*Singh v. Google Inc.*,
  No. 16-03734 BLF, 2017 U.S. Dist. LEXIS 85196
  (N.D. Cal. June 2, 2017)..............................................................................14

*Sonic-Calabasas A, Inc. v. Moreno*,
  57 Cal. 4th 1109 (2013).................................................................................5

*Sparks v. Vista Del Mar Child & Family Servs.*,
  207 Cal. App. 4th 1511 (2012).......................................................................6

*Spiegler v. Home Depot U.S.A., Inc.*,
  552 F. Supp. 2d 1036 (C.D. Cal. 2008),
  *aff'd*, 349 F. App'x 174 (9th Cir. 2009) ...................................................................13

*Stirlen v. Supercuts, Inc.*,
  51 Cal. App. 4th 1519 (1997)..........................................................................................5

*Stonebrae, L.P. v. Toll Bros.*,
  No. 08-0221 EMC, 2010 U.S. Dist. LEXIS 43076
  (N.D. Cal. Apr. 8, 2010).............................................................................................7, 11

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 2d 904 (N.D. Cal. 2011) ..........................................................................3

*Telecom Asset Mgmt., LLC v. FiberLight, LLC*,
  203 F. Supp. 3d 1013 (N.D. Cal. 2016) .......................................................................12

*Third Story Music, Inc. v. Waits*,
  41 Cal. App. 4th 798 (1995)............................................................................................6

*Trivedi v. Curexo Tech. Corp.*,
  189 Cal. App. 4th 387 (2010)..........................................................................................3

*Wayne v. Staples, Inc.*,
  135 Cal. App. 4th 466 (2006)..........................................................................................4

*Wolf v. Walt Disney Pictures & Television*,
  162 Cal. App. 4th 1107 (2008).......................................................................................6

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997)...........................................................................................9

**STATUTES**

Cal. Civ. Code § 1636 .........................................................................................................6

Cal. Civ. Code § 1638 .........................................................................................................6

Communications Decency Act Section 230 ...........................................................1, 8, 9, 10

**MISCELLANEOUS**

Anna Johansson, *Here's How You Can Actually Make Money With YouTube*,
  Entrepreneur (Aug. 24, 2016),
  https://www.entrepreneur.com/article/280966 .............................................................4

# I.   INTRODUCTION

Google's motion presented three independent grounds to dismiss the claims brought by Plaintiffs, who posted a series of graphic zombie-killing videos to YouTube and then complained that Google limited the display of third party advertisements on those videos. First, Plaintiffs' claims are barred by the parties' governing agreement, which unequivocally provides that Google "is not obligated to display any advertisements alongside" Plaintiffs' videos at all. Second, the claims are barred by Section 230 of the Communications Decency Act ("CDA"), which provides immunity for Google's decision to prevent ads from being displayed in connection with certain kinds of user-submitted content, a classic example of a protected editorial judgment. Third, Plaintiffs fail to plead facts sufficient to support the elements of the specific claims they have asserted.

In response, Plaintiffs do not dispute the key dispositive facts: Plaintiffs entered into a YouTube partner agreement with Google that allowed YouTube to display advertising alongside Plaintiffs' videos and allowed Plaintiffs to share in any revenue earned from this advertising, but that agreement expressly stated: "YouTube is not obligated to display any advertisements alongside your videos and may determine the type and format of ads available on the YouTube service." While Plaintiffs allege that they were harmed by Google's decision to limit or cease display of advertisements alongside their videos, their Opposition recognizes the contractual basis for Google's actions. Indeed, it could hardly be stated more clearly than Plaintiffs have done in their own brief: "Plaintiffs do not allege that Defendant does not perform under the contract." Opp. at 3. Far from being unconscionable or illusory, as Plaintiffs now argue, the express contractual provision is enforceable as a matter of law, and its enforcement requires the dismissal of all of Plaintiffs' claims.

Even beyond the terms of the contract, Plaintiffs' claims are barred by the CDA. Plaintiffs' argument against application of the CDA confuses the relevant provisions of that statute and fails to address the pertinent controlling authority. Finally, Plaintiffs' causes of action suffer myriad defects, as Plaintiffs fail to allege facts to meet required elements and ignore the relevant legal standards.

Because Plaintiffs have now had two chances to state a viable claim (in their original complaint and then in the FAC), and because their Opposition offers no basis on which to expect a sufficient pleading on a third attempt, Plaintiffs' claims should be dismissed with prejudice.

## II.       PLAINTIFFS' CLAIMS ARE BARRED BY THE GOVERNING CONTRACT.

Plaintiffs fail to offer any meaningful response to Google's showing that the governing agreement—YouTube's Partnership Program Terms—expressly precludes all of Plaintiffs' claims. MTD at 5-8. As the relevant clause states: "YouTube is not obligated to display any advertisements alongside your videos and may determine the type and format of ads available on the YouTube service." Declaration of Brian Hawkins, ECF No. 30 ("Hawkins Decl."), Ex. 1. Plaintiffs cannot and do not dispute that they entered into the Partnership Program Terms, that the agreement expressly authorizes Google's conduct, or that its language expressly disclaims the obligations Plaintiffs seek to impose through their causes of action. Plaintiffs further do not distinguish a single case Google cited to demonstrate that no cause of action will lie where it is based on otherwise lawful conduct expressly authorized by a governing contract, and that courts regularly dismiss such causes of action. MTD at 6-8.

Faced with the plain terms of the parties' agreement that negate their claims, Plaintiffs seek to excise the "no obligation" clause from the agreement altogether, arguing that this provision renders the governing contract "illusory" or "unconscionable," and the provision unenforceable. Opp. at 10-15. The argument is twice fatally flawed. First, Plaintiffs ignore the controlling precedent in which various courts have found the YouTube "no obligation" clause, and provisions like it, to be enforceable and not unconscionable. Second, Plaintiffs incorrectly characterize the provision as a "unilateral right to modify," and rely on inapposite case law regarding such provisions that have no application here.

### A.       The "No Obligation" Clause Does Not Make the Contract Unconscionable.

Plaintiffs argue that the governing agreement is unenforceable because the provision disclaiming any obligation to display ads is "unconscionable." This argument fails. This provision is neither procedurally nor substantively unconscionable, and certainly not both.

1    Plaintiffs do not cite any cases in which a provision of this nature has been found to be

2    unconscionable. In fact, courts have repeatedly enforced terms like those at issue here.

3        Plaintiffs assert that YouTube's terms are procedurally unconscionable because they form

4    an adhesion contract that "offers[s] no ability for content providers to negotiate or seek

5    clarification or revision." Opp. at 11. But courts have routinely found standardized online

6    agreements presented as a requirement for using online services, like the one Plaintiffs agreed to,

7    to be enforceable. *See, e.g.*, *Darnaa, LLC v. Google, Inc.*, No. 15-03221 RMW, 2015 U.S. Dist.

8    LEXIS 161791, at *6 (N.D. Cal. Dec. 2, 2015) (enforcing YouTube's Terms of Service and

9    rejecting argument that terms were unconscionable); *Swift v. Zynga Game Network, Inc.*, 805 F.

10   Supp. 2d 904, 910-12, 915 (N.D. Cal. 2011) (enforcing online agreement and rejecting plaintiff's

11   argument that agreement was unconscionable); *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 120-21,

12   123-26 (Ill. App. Ct. 2005) (same).

13       Indeed, *none* of the cases Plaintiffs cite regarding procedural unconscionability (Opp. at

14   11-12) relate to agreements between online service providers and users.[1] This is for good reason.

15   It would be nearly impossible for a service like YouTube to contract with each of its millions of

16   users individually. It is entirely reasonable for Google to offer a standardized agreement that

17   establishes the rights of YouTube and its users regarding the operation of that service, rather than

18   having to negotiate individual terms with every single user—particularly in light of the fact that

19   the YouTube service is provided to Plaintiffs free of charge.

20       Moreover, Plaintiffs do not dispute that they were free to remove their videos from

21   YouTube at any time. Although Plaintiffs argue that YouTube is the "only game in town" for

22

23       [1] The vast majority of cases Plaintiffs cite (Opp. at 10-11) relate to protecting employees

24   "from oppressive contracts imposed by employers." *Int'l Bus. Machs. Corp. v. Bajorek*, 191 F.3d
     1033, 1042 (9th Cir. 1999); *see also Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1243 (2016)
     (addressing employer-employee arbitration agreement); *Circuit City Stores, Inc. v. Adams*, 279

25   F.3d 889, 893 (9th Cir. 2002) (same); *Trivedi v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 393
     (2010) (same). Further, the court in *Baltazar* rejected plaintiff's argument that the agreement was

26   unconscionable, and noted that "[t]o the extent *Trivedi* suggested otherwise, we disapprove it."
     62 Cal. 4th at 1248. The only other case Plaintiffs cite is entirely inapposite: it concerned a

27   "'take it or leave it' arbitration clause" with a class action waiver that the court deemed "contrary
     to fundamental public policy in California." *Klussman v. Cross-Country Bank*, 134 Cal. App. 4th

28   1283, 1298 (2005).

content creators seeking to share their videos and that, deprived of its profits from YouTube, Plaintiffs have lost their "ability to continue generating revenue from their content." Opp. at 7. This assertion is as fictional as the exploding zombies in Plaintiffs' videos. YouTube is far from the only option Plaintiffs have for monetizing their content. As the court in *Darnaa* discussed:

> Although "YouTube is undoubtedly a popular video-sharing website," plaintiff did not lack any meaningful choice because it could have publicized the music video "by putting it on various other file-sharing websites or on an independent website."

2015 U.S. Dist. LEXIS 161791, at *6. An article published by *Entrepreneur* magazine titled "Here's How You Can Actually Make Money With YouTube" notes that "YouTube ads aren't the only revenue-generating opportunities for creative individuals willing to work hard and develop actual business plans."[2] The availability of choices for free video-hosting services and alternative avenues for monetization defeat Plaintiffs' claim of unconscionability. *See Darnaa*, 2015 U.S. Dist. LEXIS 161791, at *6 (citing *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (2006) ("There can be no oppression establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices.")); *Dean Witter Reynolds v. Superior Court*, 211 Cal. App. 3d 758, 769 (1989) ("[T]he existence of reasonably available market alternatives defeats a claim of adhesiveness.").

In addition to their inability to demonstrate procedural unconscionability, Plaintiffs also fail to assert the "conscience-shocking" one-sidedness that California law requires to demonstrate substantive unconscionability in the contract term at issue. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012); *accord Siemens Credit Corp. v. Newlands*, 905 F. Supp. 757, 765 (N.D. Cal. 1994) ("A (substantively) unconscionable bargain has been defined as one that 'no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other.'" (quoting *Hume v. United States*, 132 U.S. 406 (1889))). The cases Plaintiffs cite relating to substantive unconscionability (Opp. at 12-13 & n.11) have no application: all but one addressed mandatory

---

[2] Anna Johansson, *Here's How You Can Actually Make Money With YouTube*, ENTREPRENEUR (Aug. 24, 2016), https://www.entrepreneur.com/article/280966.

arbitration provisions (with most again in the employer-employee context) entirely distinguishable from the reasonable provision at issue here.[3]

Google provides the YouTube service for free, covering the substantial costs of file storage, bandwidth, and administration—**with no monetary payments required from Plaintiffs**. Hawkins Decl. ¶ 2. When no ads run alongside Plaintiffs' videos, Google receives no benefit of advertising revenues from these videos either; and Plaintiffs are free to remove their videos from YouTube at any time. Hawkins Decl. Ex. 1. Plaintiffs have no obligation to maintain their videos on YouTube, and Google has no obligation to maintain ads on those videos. The "no obligation" clause at issue is thus evenhanded and is not excessively favorable toward Google. And it is a far cry from Plaintiff's examples of contract provisions deemed unconscionable.[4]

## B.    The "No Obligation" Clause Does Not Make the Contract Illusory.

Plaintiffs also attempt to argue that the "no-obligation" clause allows Google a "unilateral right to modify" the governing agreement, thus making the contract "illusory." Opp. at 13-15. This reading incorrectly characterizes the purpose and effect of the provision, attempts to rewrite the parties' agreement to include a commitment Google never made, and misapplies the governing principles of law. There is a clear difference between a provision in which one party *disclaims an obligation to take a certain action* in the context of a larger agreement, as is the case here, and a provision providing a general and unilateral right for one party to *modify any*

---

[3] *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003); *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013); *Pinnacle*, 55 Cal. 4th at 246; *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 115 (2000); *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532 (1997); *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 820 (1981). Many of these do not even stand for the proposition Plaintiffs assert: in *Pinnacle*, the California Supreme Court reversed the Court of Appeals and rejected the assertion that the agreement was unconscionable. 55 Cal. 4th at 250. And *Ingle* may no longer be good law at all in light of "intervening" United States and California Supreme Court decisions. *See Bradford v. Flagship Facility Servs.*, No. 17-01245 LHK, 2017 U.S. Dist. LEXIS 115262, at *25 (N.D. Cal. July 24, 2017). The only other case is inapposite: it addresses bank fees for processing checks. *Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 928 (1985).

[4] Moreover, Plaintiffs allege in the Amended Complaint that any decisions by Google to restrict advertisements on Plaintiffs' videos were motivated by the demands of its advertisers and the criteria those advertisers set. *See* FAC ¶¶ 4-5, 28-30. Taking those allegations as true, Google's need to respond to these demands explains its need to preserve flexibility via the "no obligation" clause.

*term in the agreement itself.* Provisions in the former category are not unilateral contract modification clauses at all; they do not provide one party with the right to generally modify the contract, and instead make clear that a party does not have a particular obligation. Far from deeming them "illusory," courts routinely enforce such provisions as the embodiment of the parties' intentions.[5] *See, e.g.*, *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1112 (2008) (contract providing that defendant "was under no obligation to exercise any of the rights granted to it" not deemed illusory); *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 801 (1995) (contract providing defendant with right to license recordings and also to "refrain from any or all of the foregoing" at its sole discretion not illusory); MTD at 6-8.

Plaintiffs' authorities are not at all to the contrary. Those cases address clauses that provide one party with a unilateral right to *change any term* in the contract. *See Casas v. Carmax Auto Superstores Cal. LLC*, 224 Cal. App. 4th 1233, 1236 (2014) (contract provided for defendant to "unilaterally modify or terminate the agreement"); *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 700 (2013) (contract allowed defendant to make changes at its sole discretion and without notice).[6] That is simply not what the provision at issue here says. It is not a "unilateral modification" provision, and it is not a unilateral modification by Google that bars

---

[5] Under the "fundamental rules of contract interpretation" pursuant to California law, courts must give effect to "the mutual intention of the parties" as "inferred, if possible, solely from the written provisions of the contract." *Minich v. Allstate Ins. Co.*, 193 Cal. App. 4th 477 (2011); *see also* Cal. Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."); Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.").

[6] The following cases Plaintiffs cite relating to unilateral modification clauses fall into this category. *See Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 926 (9th Cir. 2013); *Net Glob. Mktg., Inc. v. Dialtone, Inc.*, 217 F. App'x 598, 602 (9th Cir. 2007); *Ingle*, 328 F.3d at 1179; *Mohamed v. Uber Techs., Inc.*, 109 F.Supp.3d 1185, 1228-29 (N.D. Cal. June 9, 2015), *rev'd in part*, 848 F.3d 1201 (9th Cir. 2016); *O'Connor v. Uber Techs., Inc.*, 150 F. Supp. 3d 1095 (N.D. Cal. 2015); *Poublon v. Robinson Co.*, No. 12-06654, 2015 WL 588515, at *10 (C.D. Cal. Jan. 12, 2015), *rev'd*, 846 F.3d 1251 (9th Cir. 2017); *Ridgeway v. Nabors Completion & Prod. Servs. Co.*, 139 F. Supp. 3d 1084 (C.D. Cal. 2015), *appeal docketed*, No. 15-56673 (9th Cir. Oct. 28, 2015); *Sparks v. Vista Del Mar Child & Family Servs.*, 207 Cal. App. 4th 1511, 1523 (2012); *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1214 (1998). And some of Plaintiffs' cases reject that even a unilateral modification clause may be deemed illusory. *See Asmus v. Pac. Bell*, 23 Cal. 4th 1, 16 (2000) (contract not illusory: terms governed "[a]s long as the MESP remained in force"); *Serpa*, 215 Cal. App. 4th at 700 (agreement not illusory).

1   Plaintiffs' claims. Rather, it is the existing contractual provision that expressly states that Google

2   has no obligation to display advertisements.

3       Plaintiffs' argument regarding illusory unilateral modification clauses is simply another

4   variation on the same theme: it amounts to an assertion that Google had a contractual obligation

5   to display advertisements alongside their videos, and that Google unilaterally modified its

6   advertising placement policy in breach of that obligation. Opp. at 14-15. Yet Plaintiffs fail to

7   plead the existence of any actual contract terms that were breached by the conduct at issue, or

8   that were modified by Google. The reason why they cannot do so is readily apparent: the

9   agreement imposes no requirement on Google to display advertisements, the parties' agreement

10  provides precisely the opposite. MTD at 5-9.

11      Finally, Plaintiffs' argument relating to good faith and fair dealing is equally unavailing.

12  The duty of good faith and fair dealing cannot be used to override an express provision. When

13  "acts and conduct [are] authorized by the express provisions of the contract, no covenant of good

14  faith and fair dealing can be implied which forbids such acts and conduct." *Carma Developers*

15  *(Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992); *see also* MTD at 7 (citing

16  cases). Plaintiffs' discussion in their Opposition at 15-16 does not speak to this fundamental

17  principle. They merely address the same set of cases relating to employee-employer relations

18  and/or arbitration provisions that have no bearing here.[7] Exercise of discretion with respect to an

19  action that one has no contractual duty to undertake at all—such as the display of advertisements

20  here—is not a basis for breach of the implied covenant. *Stonebrae, L.P. v. Toll Bros.*, No. 08-

21  0221 EMC, 2010 U.S. Dist. LEXIS 43076, at *16 (N.D. Cal. Apr. 8, 2010). The cases cited by

22  Plaintiffs, involving express contractual duties, are inapposite here.

23  **III.   PLAINTIFFS' CLAIMS ARE BARRED BY SECTION 230 OF THE CDA.**

24      As explained in Google's opening brief, Section 230 of the CDA bars claims like

25  Plaintiffs' that seek to hold online services liable as publishers for exercising editorial discretion

26  _____

27      [7] The majority of these cases are addressed *supra* at 5, and the remaining cases fall into the
    same category. *See Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975 (2010) (addressing employer-
28  employee arbitration provision); *Roman v. Superior Court*, 172 Cal. App. 4th 1462 (2009)
    (same); *Badie v. Bank of Am.*, 67 Cal. App. 4th 779 (1998) (ADR clause).

1   concerning material posted on their services. Plaintiffs attempt to evade the application of

2   Section 230, but their arguments reflect a fundamental misunderstanding of the law. First,

3   Plaintiffs argue that their videos cannot be considered "objectionable," but that determination

4   matters only for an analysis under 230(c)(2), a different section of the statute on which Google's

5   motion did not rely. *See* MTD at 12 n.12. Plaintiffs' characterization of their videos is irrelevant

6   to Google's entitlement to immunity under Section 230(c)(1). Second, Plaintiffs claim, without

7   reference to any case, that Section 230 does not apply because Google "is not *removing* content

8   from its website at all, but rather simply demonetizing it." Opp. at 19. However, Plaintiffs fail to

9   address the case law that a publisher's decision regarding the placement of third-party content

10   such as advertisements is protected under 230(c)(1). MTD at 9-12. Finally, Plaintiffs argue that

11   the CDA does not apply to breach of contract claims under state law, but that is not a correct

12   statement of the law.

13       Google's opening brief cited upwards of a dozen cases supporting the proposition that

14   Section 230(c)(1) immunity covers Google's decisions concerning whether to allow, remove, or

15   limit third party advertising on its service. MTD at 9-12 (citing cases). Together, these cases

16   demonstrate that Google's YouTube service is an "interactive computer service" that qualifies

17   for Section 230 immunity, that the CDA shields such a service from liability for Google's

18   "publication decisions," and that decisions regarding publication of third-party advertisements

19   constitute publisher functions covered by Section 230(c)(1). *Id.* Plaintiffs do not distinguish *a*

20   *single one* of these cases.[8]

21       The arguments Plaintiffs *do* make are easily disposed of. Plaintiffs first argue that Section

22   230 does not bar their claims because their videos are not "otherwise objectionable." Opp. at 17-

23   18. That highlights Plaintiffs' fundamental misunderstanding of Section 230(c). As shown in

24   Google's opening brief, Section 230(c)(1) immunizes Google, as the provider of an "interactive

---

[8] Plaintiffs do cite *Goddard v. Google, Inc.*, but only an earlier decision of the court, and only as the decision relates to 230(c)(2). No. 08-2738 JF, 2008 U.S. Dist. LEXIS 101890 (N.D. Cal. Dec. 17, 2008). Again, Google has not moved under 230(c)(2) at this time. Plaintiffs do not address the portion of that decision dismissing the claims pursuant to 230(c)(1), *id* at *5-21, or the court's subsequent decision dismissing the plaintiff's amended complaint pursuant to 230(c)(1) again, 640 F. Supp. 2d 1193 (N.D. Cal. 2009).

computer service," for exercising "traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content" that originates with third-party users. *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). Section 230(c)(1) says nothing about the nature or character of the content over which a provider exercises its editorial discretion. The "otherwise objectionable" language is found in the separate and independent provision of Section 230(c)(2), which is not a basis Google has asserted for dismissal.[9] *See* MTD at 12 n.12.

Plaintiffs then argue that Google should not be entitled to Section 230(c)(1) immunity because Google "is not *removing* content … but rather simply demonetizing it" and doing so in bad faith. Opp. at 19. Plaintiffs fail to cite a single case to support their argument that Section 230(c)(1) only applies to "removal" of content. Plaintiffs' argument also makes little logical sense—if Section 230(c)(1) allows online services to decide to remove content entirely, then, *a fortiori*, it encompasses decisions about whether advertisements are displayed with that content. Indeed, as cited in Google's opening brief, a consistent line of cases in this District—all ignored by Plaintiffs—have held that Section 230(c)(1) provides immunity to online services making similar types of editorial decisions to the one at issue here. MTD at 10-11. In particular, Google's application of policies for placing third party advertisements has been held to be within its Section 230(c)(1) immunity. *Gonzalez v. Google, Inc.*, No. 16-03282 DMR, 2017 U.S. Dist. LEXIS 175327 (N.D. Cal. Oct. 23, 2017) (Google process of selecting advertisements to run alongside content falls within scope of immunity under Section 230(c)(1)). Plaintiffs' argument draws nonexistent distinctions among the types of publishing functions protected by Section 230(c)(1) and ignores clear precedent from this District that Google should be protected as a publisher with respect to its decisions concerning placement of third-party advertising.

Finally, Plaintiffs erroneously state that Section 230(c)(1) does not provide immunity as to its breach of contract claim because the CDA "expressly permits such state law claims." Opp. at 19. That is incorrect. The plain terms of the statute provide that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with

---

[9] Accordingly, the cases Plaintiffs cite construing the nature of "objectionable" content under Section 230(c)(2) have no bearing on the relevant issues here.

1   this section." Section 230(e)(3). In turn, courts have routinely found that Section 230 provides

2   immunity from state law breach of contract claims. *See, e.g.*, *Black v. Google Inc.*, No. 10-02381

3   CW, 2010 U.S. Dist. LEXIS 82905 (N.D. Cal. Aug. 13, 2010) (finding Section 230 barred all of

4   plaintiff's claims, including breach of contract, and granting Google's motion to dismiss), *aff'd*,

5   457 F. App'x 622 (9th Cir. 2011); *Goddard*, 640 F. Supp. 2d 1193 (same).

6   **IV.    PLAINTIFFS FAIL TO OTHERWISE STATE A CLAIM.**

7   **A.    The Breach of Express Contract Claim Fails.**

8        Plaintiffs essentially concede in their opposition brief that they have no claim against

9   Google for breach of express contract by admitting that "Plaintiffs do not allege that Defendant

10   does not perform under the contract." Opp. at 3. And Plaintiffs fail to identify any express

11   provision of the terms that Google has allegedly breached. Although they cite to paragraphs 6

12   and 30-33 of the FAC, these paragraphs do not identify *any* express contractual terms at all. A

13   party fails to state a claim for breach of contract when "neither the terms of the contract, nor its

14   manner of breach" are asserted with sufficient detail. *Kent v. Microsoft Corp.*, No. 13-0091, 2013

15   U.S. Dist. LEXIS 93932, at *9-10 (C.D. Cal. July 1, 2013).[10]

16        Regarding Plaintiffs' own performance, which they recognize must be pleaded in order to

17   state their claim, Plaintiffs point to an allegation that they "uploaded content to YouTube in

18   accordance with Defendant's terms and conditions," and point to paragraph 2 in the FAC. Opp.

19   at 20. However, this conclusory allegation does not allege any facts demonstrating that Plaintiffs

20   actually complied with YouTube's terms and conditions—in particular, the YouTube terms that

21   disallow "violent or gory content that's primarily intended to be shocking, sensational, or

22   disrespectful," or "videos that encourage others to do things that might cause them to get badly

23   hurt, especially kids." Hawkins Decl. Ex. 3.

24

25   ─────────────

26   [10] Plaintiffs cite a single case in support of their breach of contract claim, *Raymat Materials,*
     *Inc. v. A&C Catalysts, Inc.*, but that case only underlines the flaws in Plaintiffs' pleading. No.
     13-00567 WHA, 2013 U.S. Dist. LEXIS 97778, at *4-5 (N.D. Cal. July 12, 2013). Unlike here,

27   the plaintiff in *Raymat* identified an express contractual provision the defendant allegedly
     breached, and there were no provisions explicitly authorizing defendant's conduct or precluding

28   the damages sought. *Id.*

Finally, Plaintiffs ignore the limitation on liability clause altogether. MTD at 13-14. Plaintiffs thus concede their inability to state a claim for breach of contract. *Roy v. Contra Costa Cty.*, No. 15-02672 TEH, 2015 U.S. Dist. LEXIS 131814, at *9 n.7 (N.D. Cal. Sept. 29, 2015) ("When a non-moving party's opposition to a motion to dismiss fails to address the moving party's arguments regarding certain claims, the non-moving party has conceded that those claims fail" (citing *Silva v. City of San Leandro*, 744 F. Supp. 2d 1036, 1050 (N.D. Cal. 2010))).

### B.      The Good Faith and Fair Dealing Claim Fails.

As demonstrated *supra* at 7 and in Google's opening brief at 14-16, the covenant of good faith and fair dealing cannot forbid conduct authorized by the express provisions of a contract. Plaintiffs fail to address or refute *any* of the cases cited by Google for this point. And the one case Plaintiffs do cite is inapposite because it did not address a "no obligation" clause such as the one at issue here. *Abbit v. ING USA Annuity & Life Ins. Co.*, 252 F. Supp. 3d 999, 1011 (S.D. Cal. 2017), *appeal docketed*, No. 17-55836 (9th Cir. 2017); *see also Stonebrae*, 2010 U.S. Dist. LEXIS 43076, at *16. Rather, it addressed application of the covenant of good faith and fair dealing with respect to the defendant's affirmative contractual obligations with respect to which the defendant could exercise discretion. The implied covenant may not be used to impose an obligation on Google to display advertisements with Plaintiffs' videos when the parties expressly agreed that there would be no such obligation.

### C.      The Breach of Quasi-Contract Claim Fails.

Plaintiffs ignore Google's argument that the existence of an express contract bar assertion of a quasi-contract claim. As Google explained, courts have repeatedly rejected quasi-contract claims where the conduct at issue was expressly permitted by the parties' agreement. MTD at 7. Furthermore, a quasi-contract claim cannot stand where a plaintiff fails to establish that he or she was "acting pursuant to an *express or implied request* for such services from both the defendant *and that the services rendered were *intended to and did benefit* the defendant." *Day v. Alta Bates Med. Ctr.*, 98 Cal. App. 4th 243, 248 (2002). Plaintiffs have made no such showing.

Instead, Plaintiffs make the conclusory assertion that "Defendants sought performance in the form of content uploaded by Plaintiffs"; but they fail to cite any facts showing that Google

ever requested Plaintiffs to upload or create their content. Opp. at 21-22. Nor have Plaintiffs cited any case law supporting a claim for quasi-contract under similar circumstances. By contrast, the single case Plaintiffs *do* cite involves one party acting as an agent for the other and operating at its request to secure a business transaction with a third party. *Telecom Asset Mgmt., LLC v. FiberLight, LLC*, 203 F. Supp. 3d 1013, 1020 (N.D. Cal. 2016). There is no allegation of any such relationship or request by Google here. The decision to create and upload content to YouTube was made entirely by Plaintiffs, and was subject to YouTube's Terms of Service and Partner Program Terms. Thus, the claim for breach of a quasi-contract also fails.

### D.    The Tortious Interference Claim Fails.

A claim for tortious interference requires a plausible allegation that Google had knowledge of any contractual or economic relationships between Plaintiffs and specific third parties. MTD at 16. Plaintiffs' Opposition cannot remedy the deficiency that the FAC never pleaded sufficient knowledge by Google of the relationship that was allegedly disrupted. Instead, Plaintiffs assert that "[g]eneral knowledge of the relationship may suffice showing an act of interference." Opp. at 22. But the cases that Plaintiffs cite do not support this proposition. *See Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1092 (9th Cir. 2005) (recognizing that the plaintiff must prove "that [the defendant] **knew a contract existed**" (emphasis added)); *Monex Deposit Co. v. Gilliam*, 680 F. Supp. 2d 1148, 1162-63 (C.D. Cal. 2010) (recognizing that the defendant must have "knowledge of the relationship" and finding that standard met because "as former customers of [plaintiff], the [defendants] clearly knew that [plaintiff] had economic relationships with its customers"). Plaintiffs' incorrect characterization of the relevant standard would erase the knowledge element from a tortious interference claim altogether. California law does not permit that interpretation.

In fact, the standard is as described in Google's opening brief. MTD at 16-17. There must be a plausible allegation that Google had knowledge of the contractual or economic relationships between Plaintiffs and particular third parties. The only allegation with respect to any knowledge in the entire FAC is in paragraph 95, where Plaintiffs vaguely assert that "YouTube was aware that Plaintiffs and Class members *routinely* enter into such related contracts with third parties."

1    FAC ¶ 95 (emphasis added). For the reasons addressed in Google's opening brief, this bare

2    conclusion fails as a matter of law.

3        In addition, Plaintiffs do not even argue that they alleged any independently wrongful act,

4    a separate and necessary element of the claim for interference with prospective economic

5    advantage. *See* MTD at 17-18.

6        **E.    Plaintiffs' Remaining UCL Claim Fails.**

7        As a threshold matter, Plaintiffs have conceded that their claims under the "fraudulent"

8    and "unlawful" prongs of the UCL have no basis and have agreed to dismiss them. Opp. at 23

9    n.19. Plaintiffs' remaining UCL claim fails because Plaintiffs have not sufficiently pleaded that

10   Google's conduct was "unfair."

11       First, Plaintiffs' UCL claim fails because conduct that has been expressly agreed to in a

12   contract cannot violate the UCL or be considered "unfair." MTD at 8; *see, e.g.*, *Spiegler v. Home*

13   *Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1046 (C.D. Cal. 2008) ("[T]he UCL cannot be used to

14   rewrite [plaintiffs'] contracts or to determine whether the terms of their contracts are fair."),

15   *aff'd*, 349 F. App'x 174 (9th Cir. 2009). Plaintiffs do not address this line of cases at all, and

16   indeed, Plaintiffs themselves cite cases that stand for the same point. *See, e.g.*, *S. Bay Chevrolet*

17   *v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 887 (1999) (affirming trial court's

18   finding that allegedly "unfair" conduct was "contractually authorized and did not violate section

19   17200" and stating that "the 'unfairness' prong of section 17200 'does not give the courts a

20   general license to review the fairness of contracts'" (citation omitted)). Plaintiffs offer no other

21   argument to the contrary. Therefore, Plaintiffs' remaining UCL claim should be dismissed on

22   this ground alone.

23       Second, Plaintiffs attempt to characterize their claim as a "consumer" case and invoke the

24   "balancing test," but they cite no authority for the proposition that a claim by a business seeking

25   redress for lost revenues and business opportunities should so qualify. Courts commonly treat

26   claims such as those asserted by Plaintiffs as "business" cases. MTD at 19 (citing cases); *see also*

27   *In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 998-99 (N.D. Cal. 2010) (rejecting UCL

28   claim brought by "small mom and pop merchants" because the claim "alleges only that the

1   conduct has a tendency to cause injury to their business interests" and does "not allege facts

2   sufficient to demonstrate a connection to the protection of the public"). Indeed, Plaintiffs make

3   no effort to distinguish *Levitt v. Yelp! Inc.*, in which the Ninth Circuit treated the claim that

4   Yelp's advertising practices hurt the plaintiffs as a business case and then found that the

5   individualized harm alleged by the business owners did not amount to a violation of antitrust

6   laws or threaten or harm competition. MTD at 20 (citing 765 F.3d 1123, 1137 (9th Cir. 2014)).

7   Here, Plaintiffs repeatedly assert that they are "business partners" with YouTube, directly

8   undermining the claim that they should be treated as consumers. Opp. at 1-2, 25.[11]

9       Finally, Plaintiffs' argument that their claims meet the "tethering" test fares no better.

10  Plaintiffs' "unfairness" argument is fundamentally flawed because it is premised entirely on

11  alleged individualized harm, rather than any conceivable harm to competition (MTD at 19-20),

12  and Plaintiffs fail to distinguish *any* of the cases Google cited showing that courts regularly

13  dismiss claims based on individualized harm. Plaintiffs attempt to cure this deficiency by

14  asserting that Google "negatively impacted thousands of people, and continues to do so" and that

15  Google "is a virtual monopoly when it comes to forums for posting creative content." Opp. at 24-

16  25. These assertions fail to overcome the flaw in Plaintiffs' argument that the "thousands"

17  allegedly impacted are all in the nature of businesses with their own individualized alleged

18  harms, as with the business owners in *Levitt v. Yelp*, and those harms are not cognizable under

19  California's UCL. Plaintiffs have failed to allege any violation of antitrust laws or harm to

20  competition. Plaintiffs therefore also fail to meet the requirements of the "tethering" test.

21

22

23

---

24      [11] Plaintiffs' allegations do not satisfy the "balancing" test even if it did apply. Plaintiffs do
    not dispute that the "balancing" test requires that Google's conduct be "immoral, unethical,
25  oppressive, unscrupulous, or substantially injurious to consumers." MTD at 19 n.14; Opp. at 24.
    But Plaintiffs must do more than assert conclusory statements of oppressiveness or substantial
26  harm. *See Palmer v. Apple Inc.*, No. 15-05808 RMW, 2016 U.S. Dist. LEXIS 51823, at *20
    (N.D. Cal. Apr. 15, 2016) ("[W]hile plaintiff asserts that Apple's conduct is 'immoral, unethical,
27  oppressive, unscrupulous, and injurious,' the court need not accept as true or 'allegations that are
    merely conclusory.'"); *Singh v. Google Inc.*, No. 16-03734 BLF, 2017 U.S. Dist. LEXIS 85196,
28  at *12 (N.D. Cal. June 2, 2017) (rejecting claim of Google's "unfairness" under balancing test
    for lack of "factual support").

1    **V.    CONCLUSION**

2         For the foregoing reasons and those explained in its opening brief, Google respectfully

3    requests that the Court dismiss Plaintiffs' First Amended Complaint with prejudice.

4

5    Dated: February 9, 2018                    WILSON SONSINI GOODRICH & ROSATI
                                                Professional Corporation
6
                                                By: /s/ *Maura L. Rees*
7                                                       Maura L. Rees

8                                                *Attorneys for Defendants*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28